SUGAR v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit. July 8, 1918.)

No. 3176.

1. CRIMINAL LAW ☞1178—WAIVER OF ERROR.
    Where error assigned, on ground of objection to the indictment, that the grand jury was not selected, designated, nor impaneled according to law, was not argued orally or by brief, and the record disclosed no fact upon which the claim could be based, it would not be considered.

2. ARMY AND NAVY ☞20—SELECTIVE DRAFT LAW—CONSTITUTIONALITY.
    Selective Draft Act May 18, 1917, is in no way contrary to the letter or spirit of the Constitution, nor to any intelligent conception of free government.

3. CONSTITUTIONAL LAW ☞62—SELECTIVE DRAFT LAW—DELEGATION OF POWERS.
    Selective Draft Act May 18, 1917, is not unconstitutional as conferring legislative power upon the President, notwithstanding the presidential proclamation of the same date, issued as directed by section 5 of the act, which required registration of citizens specified therein; such proclamation having been designed to give notice of, and explain the act, but not to have the force of a law.

4. INDICTMENT AND INFORMATION ☞111(4)—NEGATIVING EXCEPTIONS IN STATUTE.
    Indictment charging failure to register as required by the Selective Draft Law, which alleged that accused was a male between ages of 21 and 30, and was not an officer or enlisted man of the Regular Army or Navy, nor of the National Guard or Naval Militia, nor of the Officers' Reserve Corps, nor of the Reserve Corps in the service of the United States, and was not in any manner exempted nor excused from registering, sufficiently negatived the exceptions in the act.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

5. ARMY AND NAVY ⟐40—FAILURE TO REGISTER UNDER DRAFT LAW—INDICT-
MENT—SUFFICIENCY.

Indictment charging failure to register as required by Selective Draft
Act May 18, 1917, need not negative accused's bad health, though in-
ability, through sickness, to register, might disprove willful refusal to
register.

6. ARMY AND NAVY ⟐40—FAILURE TO REGISTER UNDER DRAFT LAW—INDICT-
MENT—SUFFICIENCY.

The Selective Draft Act May 18, 1917, and the President's proclamation
in regard thereto, do not require indictment for refusal to register to
allege the age of accused.

7. CRIMINAL LAW ⟐970(1)—ARREST OF JUDGMENT—INDICTMENT—PLEA OF
GUILTY.

Where indictment specifically alleged willful refusal to register under
Selective Draft Act May 18, 1917, and accused pleaded guilty thereto,
there could be no force in his motion in arrest of judgment.

In Error to the District Court of the United States for the South-
ern Division of the Eastern District of Michigan; Arthur J. Tuttle,
Judge.

Maurice Sugar was indicted for willful refusal to register under
Selective Draft Act May 18, 1917, entered plea of guilty, was sen-
tenced, and entered motion in arrest of the judgment. To review
order denying such motion, he brings error. Affirmed.

Joseph B. Beckenstein, of Detroit, Mich. (Willis G. Clarke, of De-
troit, Mich., and Seymour Stedman, of Chicago, Ill., of counsel), for
plaintiff in error.

John E. Kinnane, U. S. Atty., of Detroit, Mich. (Andrew C. Baird,
of Detroit, Mich., of counsel), for the United States.

Before WARRINGTON and KNAPPEN, Circuit Judges, and
WALTER EVANS, District Judge.

EVANS, District Judge. Section 5 of the act commonly known as
the Selective Draft Act (chapter 15, 40 Stat. 80), approved May 18,
1917, contains the following provisions:

"All male persons between the ages of twenty-one and thirty, both inclu-
sive, shall be subject to registration in accordance with regulations to be
prescribed by the President; and upon proclamation by the President or other
public notice given by him or by his direction stating the time and place of
such registration it shall be the duty of all persons of the designated ages,
except officers and enlisted men of the Regular Army, the Navy, and the
National Guard and Naval Militia while in the service of the United States,
to present themselves for and submit to registration under the provisions of
this act; and every such person shall be deemed to have notice of the re-
quirements of this act upon the publication of said proclamation or other no-
tice as aforesaid given by the President or by his direction; and any person
who shall willfully fail or refuse to present himself for registration or to
submit thereto as herein provided, shall be guilty of a misdemeanor and
shall, upon conviction in the district court of the United States having juris-
diction thereof, be punished by imprisonment for not more than one year,
and shall thereupon be duly registered."

On the same day the President made and published a proclamation
wherein was recited in full, among others, section 5 of the act. After
this recital the President said:

⟐For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

"And I do further proclaim and give notice to all persons subject to registration in the several states and in the District of Columbia, in accordance with the above law, that the time and place of such registration shall be between 7 a. m. and 9 p. m. on the fifth day of June, 1917, at the registration place in the precinct wherein they have their permanent homes. Those who shall have attained their twenty-first birthday and who shall not have attained their thirty-first birthday on or before the day here named are required to register, excepting only officers and enlisted men of the Regular Army, the Navy, the Marine Corps, and the National Guard and Naval Militia while in the service of the United States, and officers in the Officers' Reserve Corps and enlisted men in the Enlisted Reserve Corps while in active service."

The indictment charges that the accused was a male person between the ages of 21 and 30 years; that he was a resident of Detroit at 1109 Euclid avenue west, which was in the Sixteenth precinct of the Fourteenth ward of that city; and that he willfully failed and refused to present himself for registration at the time and place indicated; and, further, that he was not at that time—

"An officer or enlisted man of the regular army, or the navy, or of the Marine Corps of the United States, and not being then and there an officer or an enlisted man of the National Guard or Naval Militia in the service of the United States, or of the Officers' Reserve Corps or enlisted in the Enlisted Reserve Corps in the service of the United States, and not being then and there in any manner exempted or excused from registering under the terms of the aforesaid act of Congress."

He moved the court to quash the indictment, and, that motion being overruled, he filed a demurrer, which was also overruled. He then entered a plea of not guilty, but afterwards, with leave of the court, withdrew that plea, and pleaded that he was guilty of the offense charged in the indictment, and thereupon was sentenced to one year in the Detroit House of Correction.

Subsequently he entered a motion in arrest of the judgment, and, upon that being overruled, the writ of error was sued out.

The motion to quash the indictment, the demurrer thereto, and the motion in arrest of the judgment entered upon the plea of guilty, all seem to rest upon the same propositions, which, stated generally, are:

(1) That the Selective Draft Act violates the Constitution of the United States.

(2) That it is against the spirit of that instrument and against the spirit of free government.

(3) That the indictment does not sufficiently charge an offense under the act.

(4) That it is too vague, uncertain and ambiguous to give notice of the offense charged, and

[1] (5) That the grand jury which returned it was not selected, designated, or impaneled according to law. However, as the error assigned upon this ground of objection to the indictment was not argued, either before the court or by brief, and as the record discloses no fact upon which the claim is or could be based, it calls for no comment, and must be dismissed from further consideration.

[2] In May, 1917, the country, pursuant to the declaration by Congress made in April, had become engaged in a great war for the achievement of the most justifiable ends. The Constitution of the

United States plainly gives to Congress authority not only to declare war, but to raise and equip the armies essential to obtaining the amplest and most beneficial results from the conflict. Congress determined by the enactment of the statute upon which the indictment is based that the way to raise the necessary army was by a selective draft, and gave the President power to put into full operation the measures designed to accomplish that end. The act prescribed the manner of doing this, and its provisions, speaking generally, are so manifestly within the constitutional power of Congress as not to admit of serious discussion. Nor is it possible to find in the Constitution a word or a line which could be fairly held to indicate any subtle "spirit," either of its own or of the "free government" built upon it, which, to be found, must be metaphysically searched out; and we conclude that to raise an army by drafting the men necessary for that purpose is in no way contrary to either the letter or the spirit of the Constitution nor contrary to any intelligent conception of free government.

But nothing more need be said upon the general question of the constitutionality of the Selective Draft Act, because, apart from the considerations stated, the Supreme Court definitely held it to be constitutional in Arver v. United States, 245 U. S. 366, 38 Sup. Ct. 159, 62 L. Ed. 349, and in other decisions pointed out by this court (March 5, 1918, in Breitmayer v. United States, 249 Fed. 929, —— C. C. A. ——).

[3] Nevertheless it is yet insisted that the act violates the Constitution because, as counsel contends, it confers legislative power upon the President. It is elementary that Congress cannot delegate legislative power to the President (United States v. Moody [D. C.] 164 Fed. 269), but we find no such delegation in the Selective Draft Act.

Cases like United States v. 200 Barrels of Whisky, 95 U. S. 576, 24 L. Ed. 491, and United States v. 11,150 Pounds of Butter, 195 Fed. 663, 115 C. C. A. 463, establish the proposition that Congress may authorize heads of departments or other executive officers to make regulations within certain limitations, and that when so made within those limitations, such regulations have the force and effect of law and may be enforced as such. But a careful study of the proclamation of the President now in question will show that, while the future making of regulations in the premises was foreshadowed, none were made nor intended to be made by or through that document. Its manifest purpose was to give the people of the United States wide, accurate, and official information of the enactment of the statutory provision now before us and which is set out in full therein. The act required a proclamation for the purpose of giving that character of notice to all who might be subject to the draft provisions and who were thus notified to present themselves at the proper places of registration. It was not intended that the proclamation should itself be law, but that it should give notice of the provisions of a most important statute which Congress had just enacted, and which required prompt enforcement. It is sufficient, therefore, to say that its purpose was not to add to the law, nor to make regulations, but to give to the public the most prompt and the widest possible notice of certain provisions of a new law.

Ordinarily the rule of law is that all persons must take notice and

are presumed to have immediate notice of the enactment of a statute, and it is elementary that all are bound by it whether or not they have had actual notice of it, but the obvious purpose of the provision in this statute requiring the issuing of a proclamation by the President or some other officer to be designated by him was thereby to give notice of the provisions of the act, not, indeed, to each individual person interested, but to the public generally, and the act provides that the proclamation thus made shall carry with it a presumption of notice. The arrangement was much better calculated to give widespread and real information than was the operation of a mere presumption that all citizens know the law and are bound to take notice of it. Obviously, therefore, it was in the interest of all who were subject to the draft provisions of the act that this wide publicity should be given.

[4] Assuming that when a law creating a crime contains exceptions which qualify the general provision the indictment should negative all those exceptions, we nevertheless find that there was no exception in the act itself which was not adequately negatived in the indictment.

[5] There was no necessity for averring in the indictment that the accused was in good health, inasmuch as there was no exception of that character named in the statute, though at the trial under such an indictment evidence of bad health and consequent inability to get to the place of registration might have been offered to show that the failure to attend and register was not "willful" within the meaning of the statute, and probably a jury, if the other testimony in connection with that tending to show bad health warranted it, would find the defendant not guilty of a *willful* refusal to register.

[6] We need not consume time in a discussion of the contention that it was necessary to state in the indictment the date of the birth of an accused person. The statute does not require it, and the suggestion on that point made in the President's proclamation was obviously advisory to the extent that it pointed out that every person should remember the date of his birth so as to be able to show the board whether or not he was within the age limit fixed for registration.

[7] After an examination of the authorities relied upon by the plaintiff in error, and after the most careful consideration possible of the character of objections made, we have concluded that no one of them was sufficient, and that there can be no force in the motion to arrest the judgment when the record shows that the indictment explicitly charged that there was a willful refusal to register, and when a plea of guilty plainly admitted the charge to be true.

It results that the judgment must be affirmed.