**UNITED STATES v. SATULOFF BROS.,**
Inc., et al.
Nos. 106, 107.

Circuit Court of Appeals, Second Circuit.
Dec. 2, 1935.

Layton H. Vogel, of Buffalo, N. Y. (James O. Moore, of Buffalo, N. Y., of counsel), for appellants.

George L. Grobe, U. S. Atty., of Buffalo, N. Y. (Robert M. Hitchcock, Asst. U. S. Atty., of New York City, of counsel), for the United States.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

The indictment, in one count, charged appellants with violation of section 1 of the Elkins Act, as amended by Act June 29, 1906, § 2 (U. S. C. title 49, § 41 (1), 49 USCA § 41 (1), in that each appellant unlawfully and knowingly solicited a rebate and concession in the sum of $896.19 from the Wabash Railway Company by means of a device, to wit, a false claim for the loss of part of a carload of turkeys while in transportation in interstate commerce, to the corporate appellant. The basis of the appellee's claim is that the corporate appellant, through the individual appellant, its secretary and treasurer, surreptitiously removed 18 barrels of turkeys from a carload consigned to them comprising a shortage later claimed from car 152 of the railroad company, shortly after 6 o'clock in the morning of November 20, 1932. This was done when no representative of the railroad company was present in the yard to check out the 18 barrels, and thereafter the corporate appellant by the individual appellant filed a claim for this shortage against the railroad company. An action was brought on said claim and recovery had in the City Court at Buffalo, N. Y. This transaction is the basis of the charge in this indictment.

On November 16, 1932, car 152 arrived at the terminal, was inspected by the inspector, who was accompanied by a checker, both employed by the railroad company. They broke the seals and inspected the contents of the car and found 80 barrels of dressed poultry in good condition, except that 4 were slightly broken; each weighed 254 pounds. It was the practice of the consignee and the railroad company for the consignee to bring an order to the office of the railroad company for the number of packages desired out of a particular car, specifying the number and car, whereupon one of the railroad men would go to the car and check out that which the order specified. It was the practice not to permit the consignee to remove freight from the car until an order was submitted. All cars were sealed at the completion of the day's work and the seals were broken daily on occasions when the consignees would submit orders. Thus when freight was taken from car 152, a record was made. The seal records pertaining to car 152 were produced and identified, as was the time record showing the dates and hours of employment, including the time of arrival and the time of departure of various employees of the railroad who had to do with this car. The first removal from car 152 was made November 18th at 5:15 p. m., when one barrel was removed; there was an order presented for this barrel. There were no further deliveries therefrom until the morning of November 20, 1932. That morning, upon the arrival of the checker, he observed no one was at car 152. Later two trucks were loading poultry at a car immediately adjoining No. 152. He identified the driver of each truck and they were both in the service of the corporate appellant. The checker immediately went to the trucks to get the order

for the removal from the cars for that which was on the trucks. A driver, Batterson, gave the checker an order which was for a clean-up of car 197, and the driver informed the checker that in addition to the 7 barrels which were then on the truck, he had removed 18 barrels on his preceding trip that morning. The checker took the order and saw that car 197 was empty and wrote thereon "25 barrels," also "before 7," to show that the checker did not actually check out that which was removed from car 197 for it was done prior to his arrival at work. Batterson gave no order for any removal from 152. The seals on 152 had been broken as well as those on three other cars, one of them 197. The door of car 152 was closed. Batterson, the truck driver, states that on this morning he arrived at work at 6 a. m., and received an order for a clean-up on a car of poultry. He immediately got his truck and went to car 197 against which the order was drawn. Upon arriving at the car he was stopped by Nathan Satuloff, an uncle of the individual appellant, to whom he stated that he had an order against car 197 and Satuloff told him, "Never mind that." They had another car, No. 152, open and he waved him to back his truck to that open door. Thereupon 18 barrels were loaded from car 152, and when the driver got to the warehouse, he was asked what car they were from and replied No. 152, and the individual appellant spoke up and said, "I will receive these 18 barrels." The 18 barrels from car 152 were unloaded, and Batterson went back to the yards and loaded 18 barrels from car 197 pursuant to his clean-up order, took them to the warehouse, and returned to the yard and loaded the remaining 7 barrels from car 197 at which time he met the checker. Sturm, an employee of the corporate appellant, corroborated Batterson that the 18 barrels were taken from car 152 and that the individual appellant said, "Never mind, I will take care of that myself." Thus there was evidence for submission to the jury supporting the charge of surreptitiously removing the 18 barrels from car 152 on the morning in question.

Subsequently a suit was brought in the City Court of Buffalo and tried before a judge, without a jury, and judgment rendered for the corporate appellant against the railroad company. A notice of appeal was served, but the appeal has not been argued.

A motion was made to quash the indictment predicated in part upon the judgment in the civil suit and denied. The appellants' attorneys were not permitted to comment upon the judgment in the opening statement and, on objection by the appellee, the judgment roll was not admitted in evidence. These are now assigned as errors, the appellants· urging that the judgment in the civil suit in their favor is admissible in this criminal prosecution to refute the charges of guilt.

In the civil action, the corporation alleged that the railroad company so improperly handled the shipment as to lose 18 barrels. The railroad company denied the alleged breach of the contract of carriage and affirmatively charged that the agents of the appellant corporation had trespassed upon the railroad property and, without permission and in violation of the statute, broke the seals of the car and removed the 18 barrels. Thus the issues were such that the verdict for the appellant corporation in the civil action and judgment against the appellants in this criminal action could not both be predicated upon true facts.

The judgment in the civil action may well be said to be a verdict on the evidence there that it was more probable than not that the facts plaintiffs there alleged were true. Between the parties to that suit this verdict was final unless reversed on appeal. As against one not a party to that suit, it is not binding. The civil action was tried between different parties upon different issues. Judgments and decrees rendered in civil suits are inadmissible in evidence in criminal prosecutions as proofs of any facts determined by such judgments or decrees, and the reason for the rule as stated has been that the parties are different and that the quantum of proof required in one case is different from that required in another. Van Schuyver v. State, 53 Okl. Cr. 150, 8 P.(2d) 688; Holmes v. State, 144 Ark. 617, 224 S. W. 394; Finley v. State, 26 Ga. App. 9, 105 S. E. 497; State v. Hogard, 12 Minn. 293 (Gil. 191); State v. Mitchell, 178 Wash. 196, 34 P.(2d) 902; Hill v. State, 22 Tex. App. 579, 3 S. W. 764; People v. Lichtenstein, 22 Cal. App. 592, 135 P. 692.

In the Van Schuyver Case, supra, the fact that the parties had litigated their civil rights to the property in another court at another time was immaterial, as not tending to prove or disprove any issue in the case on trial (criminal cause). There is authority tending to sustain the appellant's position. State v. Faulk, 30 La. Ann. 831; Commonwealth v. Harkins, 128 Mass. 79. See People v. Kenyon, 93 Mich. 19, 52 N. W. 1033, 1034; People v. Parker, 355 Ill. 258, 189 N. E. 352. But the weight of reason, we think, to be with the authorities excluding the judgment. In Schindler v. Royal Ins. Co., 258 N. Y. 310, 179 N. E. 711, 80 A. L. R. 1142, a defense to an action for loss on a fire insurance policy was that the policy was void for fraud, the insured having been convicted for fraud in a criminal trial. The court affirming the action of the court below, in striking out this defense, intimated that the criminal judgment would be admissible in evidence and expressed regret that the law did not make the conviction conclusive proof of the fraud. The court's reasoning does not apply to the facts in the case at bar. The question certified to the Court of Appeals there was: "Do the allegations stated and contained in the paragraphs of the amended answer * * * set forth facts sufficient to constitute a defense?" These paragraphs set forth an affirmative defense that by its terms a policy should be void in case of fraud of the insured touching the subject of the insurance; that plaintiff made a false and fraudulent statement of loss and damage; that he had been convicted of presenting to the defendant false and fraudulent proofs of loss; and that the judgment was a bar to the maintenance of the action by the plaintiff and the issue of the plaintiff's fraud was res adjudicata. The defense was stricken out as bad and the question certified as to its sufficiency. The court, following the weight of authority, held that the order striking out this affirmative defense should be affirmed. In arriving at the conclusion that the judgment of conviction is admissible as presumptive proof of the commission of the crime, the court did not decide any matter presented to it for decision and consequently it was but a dictum. A similar question was fairly answered in Eagle, Star & British Dominions Ins. Co. v. Heller, 149 Va.

82, at page 111, 140 S. E. 314, 57 A. L. R. 490, where it was stated that to permit a recovery under a policy of fire insurance by one who had been convicted of burning the property insured, would be to disregard the contract, be illogical, would discredit the administration of justice, and defy public policy and shock the most unenlightened conscience. The question presented on this appeal is the admissibility of a judgment of a court of civil jurisdiction in this, a criminal, trial as (1) a bar to the prosecution on the theory of res adjudicata or (2) presumptive proof of the issue of what happened to the turkeys. We think the authorities which excluded it are right in principle and reason and controlling upon us.

■ It is argued that the indictment was improperly found under U. S. C. title 49, § 41 (1), 49 USCA § 41 (1), and that if any offense was committed, it was an offense against section 10 (3) of the Interstate Commerce Act (U. S. C. title 49, § 10 (3), 49 USCA § 10 (3), and this section is claimed to be the only law pursuant to which appellants might be indicted for the acts charged by the government. Under section 10 (3) the gist of the offense is the fraud in obtaining transportation at a rate less than the established rate, by false billing or other fraudulent devices. The distinction between these sections is stated in Armour Packing Co. v. United States, 153 F. 1, 16, 14 L. R. A. (N. S.) 400 (C. C. A. 8), affirmed 209 U. S. 56, 28 S. Ct. 428, 52 L. Ed. 681, where it is said: "The gist of the shipper's offense under paragraph 3 of section 10 * * * is the fraud of obtaining transportation at a rate less than the established rate 'by false billing, false classification, false weighing, false representation of the contents of the package or false report of weight or by any other device.' * * * The fraudulent device is the substance of the offense." But another offense is referred to in section 41, namely, acceptance or receipt of a concession whereby any property in interstate or foreign commerce should be transported by any device whatever at less than the regular filed and published rate. The court said: "The substance of this offense is not the device, but the solicitation or receipt of the concession and the transportation thereby effected. It may be

850

committed whether the concession is induced by a fraudulent or an honest device, by a shrewd or a simple one, by a secret or an open one. The true meaning of the phrase 'by any device whatever' here is directly or indirectly, in any way whatever, and the evident purpose of its use was to emphasize the scope of the law so that it would clearly include the solicitation or receipt of every concession, however obtained, whereby property in interstate or foreign commerce should be transported at less than the regular filed and published rate." See, also, United States v. Altman, 8 F. Supp. 880, 882 (D. C. W. D. N. Y.).

Here the record shows that an officer of the appellants, the individual appellant, actually participated in the removal of the turkeys. He had complete charge of the claim department and himself prepared and signed the claim. Knowledge existed with and through him in the corporation of which he was an officer. This indictment sufficiently stated an offense of receiving a rebate under section 41. Under this section it was unnecessary to specify the particular character of the device; the words "a false claim," contained in the indictment, may be disregarded as mere surplusage which in no way affected its validity. Moreover, by section 556, title 18 USCA, the indictment will not be deemed insufficient for technical errors or omissions which do not prejudice the rights of a defendant and allegations containing mere surplusage have been held to be within the provisions of this section. Sugar v. United States, 252 F. 74 (C. C. A. 6), certiorari denied 248 U. S. 578, 39 S. Ct. 19, 63 L. Ed. 429. While fraud may be alleged and even proven under section 41, nevertheless it is not a necessary element to be alleged or proven under that section.

The alleged error in permitting Batterson to testify as to the conversation with Nathan Satuloff on the morning of November 20, 1932, wherein he was instructed by the latter to take a load from car 152 of which the door was open, has no merit. Satuloff's testimony indicates that he was present on this morning and the jury could have found that he had authority to give the direction testified to.

Judgment affirmed.