**UNITED STATES v. CORNELL (two cases).**

Nos. 2818, 2819.

District Court, D. Idaho, S. D.

Dec. 21, 1940.

82

John A. Carver, U. S. Dist. Atty., and E. H. Casterlin and Paul S. Boyd, Asst. U. S. Dist. Attys., all of Boise, Idaho, for plaintiff.

Vernon K. Smith, of Boise, Idaho, for defendants.

CAVANAH, District Judge.

The two defendants were indicted in separate indictments which are identical and are based upon the Selective Training and Service Act of 1940, 50 U.S.C.A. Appendix, § 301 et seq.

The indictment in each case charges the defendant with evading the requirement of the act in refusing to register in the land and naval forces of the United States at the time and in the manner prescribed in the act, and the rules and regulations made pursuant thereto.

Identical motions to quash the indictments were made in each case, and the primary ground thereof is that Congress had no power or authority under the Constitution to compel peacetime military registration, training and service and therefore the act, being violative of certain provisions of the Constitution, is unconstitutional. It is urged that the act violated the 4th, 5th, and 13th amendments of the Constitution, reserving in times of peace, the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures; and deprives a person of his liberty without due process of law; compels involuntary servitude, and delegates legislative and judicial powers to the Executive Department.

We find that the Constitution grants to Congress power to provide for the common defense and general welfare of the United States; to raise and support armies, but no appropriation of money to that use shall be for a longer term than two years; to provide and maintain a navy; to make rules for the government and regulation of land and naval forces; and to make all laws which shall be necessary and proper for carrying into execution the foregoing powers and all other powers vested by the Constitution in the Government of the United States, or in any Department or office thereof.

The inquiry then is, are these provisions of the Constitution broad enough to grant to Congress the power to enact the Selective Service Training Act of 1940?

As to their scope and meaning, we find numerous views expressed at the time of the adoption of the Constitution by the delegates to the Constitutional Convention, and thereafter by the courts when in interpreting them, and after all said by the delegates who seriously considered these plain provisions of the Constitution which do not contain any qualifications or limitations as to whether powers so granted should be only exercised during war time and not during peace time, except the limitation respecting the appropriation of money for that purpose.

Often we consider what was said by those who took part in enacting a constitutional or statutory provision so as to give aid to us in knowing what was their intent. Among those who took part in

the adoption of the Constitution different views were expressed upon this question and therefore we have to look to the plain language used in the Constitution and give it such interpretation as is practical and efficient.

Our national history and court decisions uniformly have recognized the existence of the power of Congress under the Constitution to compel military service of a citizen in case of need, when it so declares, whether in peace time or war time, and to make preparation, if Congress declares that it is imperative or necessary, or that an emergency exists requiring the raising and support of an army. It would not have to wait to prepare for defense until the nation was actually invaded, and under such a situation a formal declaration of war would not have to be made before Congress would have power to "raise and support an army", as the power is impliedly given to Congress under the provision of the Constitution "To raise and support Armies", art. 1, § 8, cl. 12, and such power is not prohibited by the provision of the Constitution granting Congress the power to "declare war". Prior to the middle of the eighteenth century a declaration of war was necessary but since then formal declarations have fallen into disuse, as declarations are merely a mode of notification, the fact of war may speak louder than words, and as war has existed for some time between certain powerful nations and open threats are made to carry it to our shores, it would seem logical to say that before Congress enacted the Selective Training Service Act of 1940, it had before it, and in mind, a situation which caused it to believe that an emergency existed and it was imperative for the nation to increase its armed forces, as they realized that it was greatly needed and necessary in the defense of our national existence.

This fundamental principle as to the power of Congress was observed by the Supreme Court of the United States in the case of Selective Draft Law Cases, 245 U.S. 366, 38 S.Ct. 159, 161, 62 L.Ed. 349, L.R.A.1918C, 361, Ann.Cas.1918B, 856, where Mr. Chief Justice White considered and disposed of the challenged existence of the authority of Congress as here urged, whenever it deemed it necessary to raise and support an army, and to make all laws which shall be necessary and proper for carrying into execution such powers. While it is true that in the Selective Draft Law Cases the Court was considering the Selective Draft Law of May 18, 1917, 50 U.S.C.A. § 226 note, and at a time when war had been declared, and the law was intended as expressed in its opening sentence to increase the military forces which was required by an existing emergency, yet the provision of the Constitution granting to Congress power to "raise and support Armies", without any limitation as to whether in war time or peace time, was given a broad interpretation by the Court to include power to exact and enforce military duty by the citizen. Otherwise, if only such governmental power, as the Court said, "can only be exercised provided the citizen consents to its exertion is in no substantial sense a power. * * * It may not be doubted that the very conception of a just government and its duty to the citizen includes the reciprocal obligation of the citizen to render military service in case of need and the right to compel it."

The Supreme Court has again said, as to when Congress has the power to "raise and support Armies", using the word "emergency" existing instead of the word "war" or the words "declaration of war" that: "The government has the right to the military service of all its able-bodied citizens; and may, when emergency arises, justly exact that service from all." In re Grimley, 137 U.S. 147, 11 S.Ct. 54, 55, 34 L.Ed. 636.

The power to declare an emergency, or being in need, or that the situation is imperative or necessary, is in Congress, and as the present Selective Training Act declares that "the Congress hereby declares that it is imperative to increase and train the personnel of the armed forces of the United States", we have the declaration of Congress that it is imperative, which is equivalent to saying that an emergency exists, or that it is needed, or that a contingency has arisen making it necessary. It is not within the province of the Courts to say that Congress was mistaken in saying that it was imperative to increase the military forces of the United States, for as has been said, that under the Constitution, Congress has exclusive power to say when and under what circumstances a situation exists, that it is imperative to increase and train the personnel of the armed forces of the

United States and requiring the citizens to render military service in case of need.

It may be noted that Section 8 of Article 1 of the Constitution enumerating the powers of Congress, separates the different powers in clauses and paragraphing them, as we find it is there stated:

"The Congress shall have Power To lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States; but all Duties, Imposts and Excises shall be uniform throughout the United States; * * *

"To declare War, grant Letters of Marque and Reprisal, and make Rules concerning Captures on Land and Water;

"To raise and support Armies, but no Appropriation of Money to that Use shall be for a longer Term than two Years;

"To provide and maintain a Navy;

"To make Rules for the Government and Regulation of the land and naval Forces; * * *

"To make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers, and all other Powers vested by this Constitution in the Government of the United States, or in any Department or Officer thereof."

It is apparent that the powers "to declare war" and "to raise and support armies" are separate as Congress may "raise and support armies" without first declaring war, for if otherwise, Congress could not raise and support an army until it had declared war, although it may declare it "imperative" for national defense to increase the armed forces. To place the construction on the separate powers "to declare war" that war must first be declared before Congress could raise or increase an army would require, here, writing these two separate powers together, when they now stand in the Constitution separately, and in separate sentences. It is not difficult to understand that the framers of the Constitution never intended that these two separate powers should be so linked together as to prohibit Congress from raising an army when and under such circumstances as in its judgment it is "imperative", or needed, or an emergency existed, before it had declared war,

for Congress does not have to wait until the nation is invaded before it can prepare for its national defense.

While a number of the decisions are where the Courts were considering conscription Acts when a State of War existed, yet, considered with other provisions of the Constitution, the provision granting power to Congress to "raise and support Armies", they uniformly gave that provision a broad interpretation as to Congress having full, complete and unconditional power and left it to determine the means by which the armies should be raised, whether by calling for volunteers or by conscription, and whether under conditions in its judgment an emergency existed, or it is imperative, or needed, either in war time or peace time, and that such Acts of Congress do not infringe on the provisions of the Constitution.

In the case of United States v. Sugar, D.C., 243 F. 423, in an exhaustive opinion, the Court upheld the constitutionality of the Conscription Act of 1917, and the various grounds attacking the constitutionality of the present act were considered and disposed of in that case and the conclusion there reached was that in construing the Constitution we must take it as a whole and not confine the objection to a single grant of power and where a general grant of power is vested in plain language without exception or limitation such power should not be crippled by interpolating a limitation. See Sugar v. United States, 6 Cir., 252 F. 74; United States v. Olsen, D.C., 253 F. 233; Kneedler v. Lane, 45 Pa. 238.

The conclusion is irresistible that it was a proper exercise of the power conferred upon Congress in broad terms and without the imposition of any limitation to "raise and support Armies" when it did so at the time it adopted the present conscription Act and declared reasons for doing so, and the means adopted therefor are appropriate to that end, which fall within the implied powers conferred by the Constitution to conscript or draft an army a necessary incident to the power to "raise and support Armies".

It results from the conclusion reached that the motions to quash in each case must be denied.