[No. 1739-1.   Division One.   September 4, 1973.]

THE STATE OF WASHINGTON, *Respondent*, v. ERNEST LEE WILLIAMS, *Appellant*.

*Caughlan & Holley* and *John Caughlan*, for appellant (appointed counsel for appeal).

*Christopher T. Bayley, Prosecuting Attorney*, and *Christopher J. Bell, Deputy*, for respondent.

WILLIAMS, J.—Ernest Lee Williams was charged by information with two counts of arson to which he pleaded not

guilty. The first trial on these charges resulted in the jury being unable to agree upon the verdict. The second trial resulted in a verdict of guilty as to both counts and Williams appeals from the judgment entered thereon.

■ The first assignment of error relates to the denial of Williams' motion for production at county expense of the record made at his first trial. This motion was made on the morning of the day the case was scheduled for trial and was too late. Although Williams may have needed the transcript for an effective defense, *Britt v. North Carolina*, 404 U.S. 226, 30 L. Ed. 2d 400, 92 S. Ct. 431 (1971), he was not entitled to a continuance of the trial so that it could be prepared because he made no showing of due diligence as required by RCW 10.46.080. *State v. Toliver*, 6 Wn. App. 531, 494 P.2d 514 (1972); *State v. Sutherland*, 3 Wn. App. 20, 472 P.2d 584 (1970). There is an affidavit of Williams' trial counsel in the record made long after the trial which states that he prepared and argued a motion for an order of production of testimony some 2 months before the trial. There is no record of this motion or of any order entered thereon. We may not consider it.

We next consider the assignments of error directed to an unusual problem which developed during the trial and the court's solution of it. The prosecuting witness, Juanita Jones, gave damaging testimony against Williams in the first trial. During the second trial, she testified at some length and then made a number of statements which were inconsistent with her testimony in the first trial and with facts established by testimony of other witnesses. The trial judge declared a recess and, sua sponte, caused her to be examined by a psychiatrist who advised the court:

> that the memory difficulty that she has is on the basis of extreme anxiety and a complex of feeling. . . . I believe that the memory deficit could be on the basis of an extreme anxiety reaction. One of the classifications of the neuroses that we have is that of the dissociative reaction where the individual can misidentify and have great difficulty in remembering, almost a total lack of adequate personality function, but it's very temporary in

duration as opposed to a psychotic reaction. . . . I believe that she has functioned sort of on the borderline. I mean that she has lived a very tense, anxious, insecure life and that it hasn't taken very much in addition, living stress, to bring about the symptoms. . . . a person of what we call low frustration tolerance, low anxiety tolerance, that she was living a life that was near in her anxiety, insecurity was near, very near the level of her tolerance; it didn't take much to push her over the line, so to speak.

The psychiatrist also advised the court that the witness was in no condition to continue her examination and would not be for a considerable period. Thereupon, the court explained the circumstances to the jury, ordered her testimony stricken because she was incompetent, and then permitted the state to publish the testimony which she had given at the first trial. Defense counsel opposed this procedure contending that he should have the right to complete his cross-examination. He also wished to impeach the witness by comparing her then testimony with that given at the first trial.

These circumstances present two basic questions: Was the witness' testimony at the first trial properly admitted in the second trial, and was the trial court correct in striking the testimony which the witness gave at the second trial.

■■ If a witness at a former trial at which the accused was present and afforded the opportunity to cross-examine becomes unavailable at the second trial, then the former testimony is admissible. RCW 10.52.060; CR 43(i); *State v. Roebuck*, 75 Wn.2d 67, 448 P.2d 934 (1968); *State v. Ortego*, 22 Wn.2d 552, 157 P.2d 320, 159 A.L.R. 1232 (1945). The trial court found Mrs. Jones unavailable for testimony at the second trial because of incompetency which it was its duty to determine.[1] *State v. Roebuck, supra; State v.*

---

[1] The "competency for the court; credibility for the jury" rule is based more upon tradition than logic when applied to the unsound mind test contained in RCW 5.60.020 and RCW 5.60.050, for both competency and credibility are based upon degrees of mental instability, only. 2 J. Wigmore, *Evidence* § 501 (3d ed. 1940). If no witness has an absolutely sound mind, a reasonable assumption, then all witnesses are

*Bishop,* 51 Wn.2d 884, 322 P.2d 883 (1958). The publication of the testimony of the witness, including her cross-examination, given at the first trial was therefore proper.

Williams contends that he should have been permitted full cross-examination and the use of the witness' testimony at the second trial to impeach her testimony at the first trial. Because the witness was found to be incompetent at the time of the second trial, consideration by the jury of the testimony given at the second trial, or further cross-examination, would have served no useful purpose. At most, it would lead the jury to believe that she was then incompetent. This was the substance of the instruction given to them by the court. The court also advised the jury that it was for them to test the credibility of the witness at the first trial. Certainly, the jury was free to take into consideration the fact that she was then incompetent.

■ Next, Williams contends that the court erred in giving an instruction that fire is presumed to be caused by accident or natural causes rather than by the deliberate act of the accused as to one count but not to the other. The court was correct in not giving the instruction as to one of the counts of arson because there was no proof of accident or natural cause, and uncontested proof that the origin of the fire was incendiary. *State v. Smith,* 142 Wash. 57, 252 P. 530 (1927).

---

of unsound mind to some extent. But this does not mean that all witnesses are incompetent; only that some are more credible than others. Accordingly, the problem for the court in applying the competency-credibility rule is to determine at what point the unsoundness of mind renders the witness incompetent rather than less credible. The Supreme Court has defined "unsound mind" as meaning

*those persons only who are commonly called insane; that is to say, those suffering from some derangement of the mind rendering them incapable of distinguishing right from wrong.* It cannot include within its terms the mere ignorant or uneducated, nor those who are incapable of receiving all of the impressions within the comprehension of those more commonly gifted. In other words, the statutory term refers to those who are without comprehension at all, not to those whose comprehension is merely limited.

*State v. Wyse,* 71 Wn.2d 434, 436, 429 P.2d 121 (1967).

The remaining assignment of error is insubstantial.

The judgment is affirmed.

SWANSON, C.J., and CALLOW, J., concur.

Petition for rehearing denied December 5, 1973.

Review granted by Supreme Court February 4, 1974.