536 P.2d 295

**The STATE of Idaho, Plaintiff-Respondent,**

**v.**

**Floyd JOHNSON, Defendant-Appellant.**

**No. 11298.**

Supreme Court of Idaho.

June 11, 1975.

Howard D. Humphrey, Clemons, Cosho, Humphrey & Samuelsen, Boise, for defendant-appellant.

W. Anthony Park, Atty. Gen., Conley Ward, Jr., James P. Kaufman, Asst. Attys. Gen., Boise, for plaintiff-respondent.

McFADDEN, Justice.

Floyd Johnson, the defendant-appellant, following trial before a jury, was found guilty of the crime of arson in the second degree. Appellant also admitted having been convicted of previous felonies. Following a pre-sentence investigation and a hearing in mitigation of sentence, the trial court entered judgment of conviction of the crime of arson in the second degree, and also of being a persistent violator, as charged in the information. The trial court sentenced appellant to an indeterminate term of not to exceed fifteen years. From this judgment and sentence appellant has perfected his appeal. This court affirms.

Briefly, the facts as developed by the state at trial are: About 10:00 p.m. on September 12, 1974, Richard W. Weeks, who was visiting with his father in Garden City, observed two men running on the roof of a building owned by his father. He heard a noise and observed flames shooting from this building. Weeks started in pursuit of these men, but was delayed somewhat by a gate. One of the men was a short distance down the alley from Weeks; and Weeks testified that, having this individual continually in view, he ran after him and observed him throw away a can. Weeks caught the man some distance away as the man was trying to get over a fence. This individual was identified as the appellant. Weeks testified that at the

time he caught the appellant he was half way over the fence, with one leg over the fence and the other leg on the side he was coming from. Weeks testified: "___ at this time he said something to the effect that he would have just about __ caught this guy if I wouldn't have caught him from behind. But what he was talking about I don't know because there was nobody else in sight nowhere."

When an officer arrived, appellant was arrested and Weeks directed the officer to the place in the alley where Weeks saw the can thrown away. They found a gas can to which was tied an auger, a bit and a piece of hose. This officer and another searched the roof of the burned building and found a hole bored in the roof. Both officers testified to smelling gasoline or a similar substance near the hole. One of the officers described the damage to the roof which led him to the conclusion that the damage had been caused by an explosion.

Appellant testified that he was mistakenly apprehended by Mr. Weeks, and his explanation of his presence in the vicinity of the fire was that he planned to meet another person who was interested in purchasing some nearby real estate owned by Johnson. Appellant testified that after hearing something that sounded like a pile of lumber toppling, he followed an individual he observed running. This other individual went over a fence and appellant was stopped near the fence when Weeks grabbed him. After appellant was able to speak he told Weeks to this effect: "If you don't quit monkeyin' around with me whoever you are chasing will get away."

Appellant sets out six assignments of error, the first of which is that the trial court erred in not granting his motions for an advisory instruction to acquit, contending the evidence was insufficient to sustain a conviction of arson. Appellant, in effect, recognizes that if the testimony of Mr. Weeks is accepted at its face value, it is arguable that a jury could find appellant guilty, but he asserts that this testimony

cannot be so accepted. He contends that this testimony is improbable from a standpoint of time. Weeks testified that he never lost sight of the man he was pursuing, but appellant contends that considering the relative ages of Weeks and appellant, a man 59 years of age, allegedly carrying a partially filled metal gas can, bit and brace, that Weeks should have caught appellant much sooner than he did.

Primarily, however, appellant points out that subsequent to the trial of this criminal case, a civil action was instituted by Edward Weeks (the owner of the building and father of the witness who pursued appellant) and an insurance company, against appellant. In this civil action, the plaintiffs sought damages for the burning of the building. In this civil action a unanimous jury returned a verdict in favor of appellant. Appellant argues that, in light of this finding by the subsequent trial, the evidence now is overwhelming for a reversal of this conviction.

Only a relatively few courts have considered such an issue as to the effect of a subsequent civil judgment in favor of a defendant on a previously tried criminal action where the appellant was found guilty. Appellant cites several cases in support of his contention that a subsequent civil determination of his innocence constitutes grounds for reversal of his criminal conviction on the grounds of insufficiency of the evidence as a matter of law. State v. Faulk, 30 La.Ann. 831 (1878); People v. Kenyon, 93 Mich. 19, 52 N.W. 1033 (1892); People v. Parker, 355 Ill. 258, 189 N.E. 352 (1934); United States v. McGee, 117 F.Supp. 27 (D.Wyo.1953). Appellant nonetheless does recognize that there is contrary authority.

The state argues that although a prior civil finding on a specific factual issue is occasionally accorded *res judicata* effect in a *subsequent* criminal prosecution, the weight of authority holds that a criminal conviction may not be impeached by a subsequent civil verdict for the defendant in a case involving similar facts. United States

v. Satuloff Bros., 79 F.2d 846 (2d Cir. 1935); People v. Lichtenstein, 22 Cal.App. 592, 135 P. 692 (1913); State v. Greenberg, 16 N.J. 568, 109 A.2d 669 (1954). The reason for the rule is said to be that the state cannot be bound by a judgment in a case in which it is not a party. United States v. Satuloff Bros., supra; see also, United States v. Smith, 446 F.2d 200 (4th Cir. 1971); People v. Lo Cicero, 14 N.Y.2d 374, 251 N.Y.S.2d 953, 200 N.E.2d 622 (1964).

 It is the conclusion of this court that the proper rule is that when a defendant is convicted in a criminal case a subsequent judgment in favor of the same individual in a civil action cannot be used to impeach the prior conviction. Valid reasons support this conclusion. In People v. Lichtenstein, supra, that court stated its reasons as follows:

"There are many obviously cogent reasons why such a rule is impossible. Among the first of these is that the evidence in the one case might be different from the evidence in the other; the evidence in the one might be stronger or weaker or more convincing or less convincing that in the other. Again, the judgment of one jury or that of a judge upon the same facts would amount to a mere conclusion or opinion of a set of individuals or of one individual from the evidence produced, and a conclusion or opinion of that sort is never permissible in the proof of a disputed fact. It possesses no probative value." 135 P. at 702.

 Under his first assignment of error, appellant further contends that there was insufficient evidence to establish the corpus delicti. He asserts that when proof of the corpus delicti is made by circumstantial evidence, it should be established by proof of such character as to exclude all uncertainty. We find no merit to appellant's claim of insufficiency of the evidence in this regard. The corpus delicti in a case of arson in the second degree is established by proof that the prohibited burning occurred as a result of a criminal agency. I.C. § 18–802 defines the crime of arson in the second degree as follows:

"Any person who wilfully and maliciously sets fire to or burns or causes to be burned or who aids, counsels or procures the burning of any building or structure of whatsoever class or character, whether the property of himself or of another, not included or described in the preceding section,[1] shall be guilty of Arson in the second degree, and upon conviction thereof, be sentenced to the penitentiary for not less than one (1) nor more than ten (10) years."

Generally, corpus delicti may be established by either direct or circumstantial evidence. State v. Kombol, 81 Idaho 530, 347 P.2d 117 (1969). The nature of the crime of arson is such that direct evidence is ordinarily unobtainable, and circumstantial evidence is particularly acceptable in such cases. People v. Beagle, 6 Cal.3d 441, 99 Cal.Rptr. 313, 492 P.2d 1 (1972); People v. Horowitz, 37 Mich.App. 151, 194 N.W. 2d 375 (1971). In this case the evidence admits but little doubt. That the building in question was burned is not disputed. Richard Weeks testified he saw two men on the building and heard a noise and observed "fire shooting up all over". This witness chased after one of the men and observed this man carrying a can later found to contain gasoline. This can had tied to it a bit, a brace, and a hose. Examination of the roof disclosed a hole had been bored into it. Investigating officers smelled the odor of gasoline or other flammable product around this area of the roof. The investigating officers found no com-

---

1. The "preceding section" referred to is I.C. § 18–801, which provides that "any person who wilfully and maliciously sets fire to or burns * * * any dwelling house, whether occupied, unoccupied or vacant, or any kitchen, shop, barn, stable or other outhouse that is a parcel thereof, or belonging to or adjoining thereto * * * shall be guilty of Arson in the first degree * * *."

bustible material inside the building which would tend to disprove any contention the fire was started by spontaneous combustion.

From the state of the record, it is the conclusion of this court that there was ample evidence to establish the corpus delicti. See, People v. Johnson, 3 Ill.App.3d 492, 279 N.E.2d 171 (1972).

■ The granting or denying of a motion for an advisory verdict is in the first instance within the sound discretion of the trial court and such discretion will not be reversed on appeal unless a clear abuse is shown. State v. Wozniak, 94 Idaho 312, 486 P.2d 1025 (1971). In State v. Urie, 92 Idaho 71, 437 P.2d 24 (1968), this court held that the denial of such a motion is discretionary with the trial court and its action is not reviewable when there is some substantial evidence upon which to base a verdict of guilty. See also, State v. Puckett, 88 Idaho 546, 401 P.2d 784 (1965). The testimony of Mr. Weeks furnished substantial evidence in support of the verdict. Even though appellant attacks this testimony, the issue as to his credibility was for the jury. State v. Pruett, 91 Idaho 537, 428 P.2d 43 (1967); State v. Buchanan, 73 Idaho 365, 252 P.2d 524 (1953). We find no error as to the first assignment. See, State v. Jesser, 95 Idaho 43, 501 P.2d 727 (1972); State v. McCarty, 47 Idaho 117, 272 P. 695 (1928).

Appellant's second and third assignments of error are directed to the trial court's overruling of his objections to testimony of two witnesses, the first to the testimony of Officer Frazier, and the second to the testimony of Captain Gant of the Cole Collister Fire Department. Officer Frazier, of the Garden City Police testified that prior to working on this police force he had spent some time working on a fire department in Michigan assisting in fire investigations; that he investigated this particular fire in Garden City on September 12, 1972. He testified that he observed the area on the roof that had been damaged by

fire, and that he smelled the odor of flammable liquids, which smelled like gasoline or similar substance; that he observed this in the area of the hole in the roof. He was asked,

"Would you describe what you observed with regards to structural damage of the building?"

and he replied:

"Yes, there was an—the roof was in two levels and the wall that would be approximately three feet high from one level to another was—had extreme structural damage to the cement blocks which appeared to me to be caused by an explosion-type—

MR. WEBB. Object, Your Honor, no foundation for that comment. I think its an opinion without foundation."

The trial court denied the objection, and the witness continued:

"It appeared to me that it had been caused by an explosion; the blocks were separated, mortar was blown out and bits of mortar on the other level of the roof that appeared to have been in the upper level."

Captain Gant testified that he had been with the fire department for fifteen years and he was involved in an average of about 300 fires a year. He stated that he was in charge of the fire crew involved in this action, he investigated the fire and he observed the building inside and out, and also on the roof. When asked if he had an opinion on the cause of the fire, he replied he did. When asked as to this opinion, appellant's counsel objected on the ground of an improper foundation being laid, which objection was overruled by the trial court. The witness then testified that in his opinion there was gasoline involved.

■ We find no error by the trial court in this regard. The testimony of both of these witnesses was based on their own personal knowledge (see, McCormick on Evidence, 2d Ed. § 14, p. 31 (1972)), derived from an examination and observation of the premises after the fire. Under

these circumstances, the fact that an opinion was expressed by such witness was not erroneous. See, 3 Wharton's Criminal Evidence § 618, P. 201 (13th ed. 1973); Harris v. Commonwealth, 342 S.W.2d 535 (Ct. App.Ky.1961); State v. Parrish, 205 Kan. 178, 468 P.2d 143 (1970). The admission of opinion testimony of an "expert" is largely discretionary with the trial court and the determination of its weight is largely a matter for the jury. State v. Cutler, 94 Idaho 295, 486 P.2d 1008 (1971). No issue was presented by appellant as to the qualifications of these witnesses, his objection being simply to the effect that the opinion was without foundation. Under these circumstances we find no error.

Appellant also contends that the trial court erred in refusing to admit two of his exhibits, which were photographs of himself taken near the fence where Mr. Weeks caught him. These two exhibits were offered to illustrate the improbability of Weeks's testimony to the effect that appellant was straddling the fence topped with barbed wire when apprehended, and that he was pulled from the fence without snagging or tearing his clothes or flesh. Admission of these exhibits become important from the appellant's viewpoint of the case because of his reliance upon the claimed improbability of the testimony of Mr. Weeks. The two exhibits in question are of appellant near the fence with his left leg raised and his foot near the top of the fence disclosing the relative height of the fence. When he offered these exhibits into evidence, the state objected to their admission on the grounds that the photographs were self-serving, irrelevant and immaterial and no proper foundation was laid. The trial court sustained the objections on the grounds stated and also that it was not a proper experiment.

■ It was the trial court's determination that the exhibits lacked the requisite similarity of circumstances and conditions to be a valid experiment. We cannot say that the trial court abused its discretion in this regard. In State v. Cypher, 92 Idaho 159, 171, 438 P.2d 904 (1968), this court stated,

"Experiments based upon reasonably similar circumstances are admissible to show the existence or nonexistence of a fact, and the circumstances do not need to be exactly the same as those surrounding the event. State v. Copenbarger, 52 Idaho 441, 16 P.2d 383 (1932). However, similarity of circumstances and conditions must be left to the sound discretion of the trial court, and determined by him, subject to review only for abuse (citations omitted)."

These photographs were portrayals of what could be denominated as an experiment. However, we do not see where the trial court abused his discretion in denying their admission, especially in view of the fact that some seven other photographs of the section of the fence involved were admitted, two of which also showed the appellant standing next to the fence holding two yardsticks end to end.

■ Appellant assigns as error the refusal of the trial court to give his requested instruction which reads,

"You are instructed that where a building is burned the presumption is that the fire was caused by accidental or natural causes. That is to say, the mere fact that a building is burned is not evidence that it was incendiary or caused by criminal act. In this case the burden of proving beyond a reasonable doubt that the fire was not accidental or due to natural causes is upon the Plaintiff, and, unless the evidence establishes beyond a reasonable doubt that the fire was incendiary or caused by criminal act, you must acquit the Defendant."

It is the conclusion of this court that there was no error in the trial court's refusal to give this instruction. The trial court instructed the jury that a defendant in a criminal action is presumed innocent until the contrary is proved; that the state had to prove the defendant guilty beyond a reasonable doubt. The trial court then de-

fined in customary terms the phrase "reasonable doubt". The trial court also instructed the jury that before they could convict the accused of the crime charged in the information the state had to prove every material allegation contained in the information beyond a reasonable doubt. The trial court also instructed the jury as to the charge of the information which alleged the accused "did then and there being, with the intent to destroy, knowingly, wilfully, intentionally, unlawfully and feloniously, set fire to, burn and cause to be burned, a certain building * * *." In this particular case there were no facts presented raising any issue as to the incendiary origin of this fire. In State v. Smith, 142 Wash. 57, 252 P. 530, 531 (1927), that court stated: "There is always a presumption that a fire is of accidental origin where the origin is a contested issue." The corollary of such a statement is simply that if there is no issue presented but that the fire was of incendiary origin, there is no reason to give such an instruction. See, State v. Williams, 9 Wash. App. 663, 513 P.2d 1045 (1973), where the court stated:

> "Next, Williams contends that the court erred in giving an instruction that fire is presumed to be caused by accident or natural causes rather than by the deliberate act of the accused as to one count but not to the other. The court was correct in not giving the instruction as to one of the counts of arson because there was no proof of accident or natural cause, and the uncontested proof that the origin of the fire was incendiary." 513 P.2d 1047.

See, Tippets v. Gem State Mut. Life Ass'n, Inc., 91 Idaho 91, 416 P.2d 38 (1966); Uniform Rules of Evidence (U.L.A.) rule 303 (1975).

■ Finally, by his last assignment of error, appellant challenges the sentence of fifteen years, contending that it was excessive and constitutes a clear abuse of discretion on the part of the trial court. After the jury returned its verdict of guilty, the trial court ordered a pre-sentence investigation, and upon its completion a report submitted. The trial court heard numerous witnesses presented by the appellant in a mitigation of sentence hearing, all of whom testified to the good qualities of the appellant.

After examination of the record, and considering the fact that the appellant was found guilty of the crime of arson in the second degree, and of being a recidivist, the court is of the opinion the sentence of 15 years given by the trial court did not constitute an abuse of discretion. Before this court will interfere with a sentence imposed by a trial court, an appellant must show a clear abuse of the trial court's discretion. State v. Ogata, 95 Idaho 309, 508 P.2d 141 (1973); State v. Butler, 93 Idaho 492, 464 P.2d 931 (1970). The maximum sentence that could have been imposed under these circumstances was for life. I.C. § 19–2514.

The judgment and sentence are affirmed.

McQUADE, C. J., DONALDSON, J., and PRATHER and MAYNARD, District Judges, concur.