STATE OF NEBRASKA, APPELLEE, V. TERRY L. MARTIN, APPELLANT.

255 N. W. 2d 844

Filed July 6, 1977. No. 41137.

John K. Sorensen of Raymond, Olsen, Coll & Sorensen, for appellant.

Paul L. Douglas, Attorney General, and Harold Mosher, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ.

BRODKEY, J.

Terry L. Martin, defendant and appellant herein, was charged in the District Court for Scotts Bluff County with shooting Patty Martin with intent to kill under section 28-410, R. R. S. 1943. After trial by jury, defendant was found guilty as charged. He has appealed to this court, contending that the District Court erred in failing to disqualify a witness; in admitting into evidence a transcribed copy of a taped statement made by the defendant; in admitting into evidence testimony which tended to show that defendant committed a crime other than the one with which he was charged; and in failing to establish in the record that the jury was properly sworn. We affirm the judgment of the District Court.

The relevant facts are as follows. In January 1976, the defendant and his wife, Patty, began to have marital difficulties when she discovered he had been seeing a female friend. On the evening of January 28, 1976, Patty left the couple's home at 8:30 o'clock p.m., ostensibly to go to the store. She did not return, however, for several hours, and was intoxicated when she returned. Shortly before she arrived home at 11:30 o'clock p.m., the defendant's female friend visited him, and he sat with her in her automobile, a short distance from defendant's home. Patty arrived home while the defendant was still in the automobile. The defendant was also intoxicated, having consumed 9 or 10 beers that evening.

After Patty and the defendant went inside their

trailer house, they began to argue, and Patty was subsequently shot in the head with a revolver. Due to her injuries, she was unable to remember the events which led to the shooting, and therefore only the defendant testified as to how Patty was shot. His testimony is summarized as follows:

The defendant stated that after the argument erupted, he told Patty that he was going to leave, and went into the bedroom to pack some clothing. His .22 caliber revolver was in the dresser, and he threw it and a box of shells on the bed. He stated that Patty objected to his leaving, and began to scuffle with him in the bedroom, during the course of which a lamp and mirror were broken. Defendant testified that he then decided to get out of the trailer, and took the gun, which was already loaded, with him. When the defendant was at the door to the trailer, Patty allegedly grabbed his left arm, and told him he was not leaving. The revolver, which defendant was holding in his left hand, then discharged during the scuffle. Defendant has consistently maintained that the shooting was an accident.

After the shooting, the defendant immediately telephoned for the police and an ambulance. Officers who arrived on the scene found Patty lying near the entrance of the trailer. The revolver was on a chair nearby, the trailer was in disarray, and the box of shells was found lying open on the bed. The revolver was a single action revolver, and in order to be fired the hammer had to be cocked and the trigger pulled; or pressure must be applied to the trigger and the hammer pulled back and released.

Defendant was arrested in the early morning hours of January 29, 1976. At approximately 8 o'clock p.m. that evening he gave a statement to the police, which was recorded. In his statement defendant accounted for the shooting in the manner already described, and stated that it was an accident. During the trial, the tape of the statement and a

transcription of it were received in evidence by the trial court.

The evidence shows that Patty was shot in the head, slightly above the left eye. The bullet lodged in her brain, and she has suffered partial paralysis, a speech impediment, and loss of memory in regard to the shooting and circumstances immediately prior and subsequent to the shooting. Defendant continued to live with Patty after her release from the hospital, in the home of her parents, until shortly before the trial. Patty's mother, Wilma Knaub, testified that during this time the defendant once stated that "he didn't mean to shoot her [Patty], he just meant to nick her." This statement was received into evidence at the trial, over defendant's objection. Defendant's motion for a mistrial after this evidence was received was overruled. Defendant denied that he had made this statement.

Prior to trial, defendant moved to disqualify Patty as a witness on the grounds that she had "absolutely no recollection whatsoever of the event [the shooting], circumstances preceding or following the incident, or any other facts relevant, material, or at issue herein." Defendant alleged that the "probative value if any, of any of the witness' testimony would be far outweighed by the prejudicial and inflammatory effect of her presence in Court upon the jury." The trial court overruled this motion. Patty was called as a witness at the trial, over defendant's objection, and testified that she was unable to recall the shooting.

The defendant testified on his own behalf, again stating that the revolver discharged accidently when he and Patty were wrestling. As previously stated, the defendant was found guilty as charged by the jury. On appeal, his assignments of error are as follows: The District Court erred in (1) failing to sustain his motion to disqualify Patty as a witness and failing to sustain his objection to her testimony; (2)

admitting into evidence the transcribed copy of the taped statement made by him after his arrest; and (3) admitting into evidence the testimony of Wilma Knaub in regard to defendant's statement that he only meant to "nick" Patty; and failing to sustain his motion for mistrial after this testimony was given. Defendant also contends that the record does not adequately reflect that the jury was sworn in this case.

We first examine defendant's contention that the record does not adequately reflect that the jury was sworn in this case. Section 29-2009, R. R. S. 1943, provides that when "all challenges have been made, the following oath shall be administered: You shall well and truly try, and true deliverance make, between the State of Nebraska and the prisoner at the bar (giving his name), so help you God." In the present case the official court reporter did not report the swearing of the jury and her stenographic notes did not reflect that portion of the trial. The trial court, however, filed a journal entry which is included in the record, and which states that "the jury as selected was duly impaneled and sworn." After the trial, defendant's counsel obtained affidavits from four jurors stating that they had no recollection as to whether the oath was administered following the selection of the jury.

We agree with defendant's contention that in criminal cases it is essential to the validity of the proceeding that the jury should be sworn. See, 50 C. J. S., Juries, § 294, p. 1085; 47 Am. Jur. 2d, Jury, §§ 339 to 345, pp. 909 to 913. We disagree, however, that the record does not adequately show that the oath required by section 29-2009, R. R. S. 1943, was given. There is no requirement that there be a verbatim record of the oath administered. See Smith v. State, 4 Neb. 277 (1876). As stated in 24A C. J. S., Criminal Law, § 1732, p. 110, a "recital in the record that the jury were sworn, or duly sworn, or impaneled and

sworn, or sworn according to law, is sufficient." The record should show that the jury was sworn, but it is not necessary that it show the exact form of oath administered; and if the record recites that the jury was sworn, it will be presumed that the proper form of oath was employed. 47 Am. Jur. 2d, Jury, § 345, p. 912; 24A C. J. S., Criminal Law, § 1855, p. 648.

In this case there is an affirmative showing in the record that the jury was sworn. A journal entry in a duly authenticated record imports verity, and it is sufficient to support a finding unless there is proof to the contrary. State v. Goodrich, 194 Neb. 217, 231 N. W. 2d 142 (1975). Defendant made no showing that the jury was not sworn, as the affidavits he produced were merely statements by jurors that they could not recall whether the oath had been administered. This assignment of error is without merit.

We next consider defendant's contention that it was error to admit in evidence the transcription of the taped statement made by him after his arrest. The statement was taken by a police officer on the evening after the shooting, and was recorded on a cassette tape. The tape was given to a stenographer, who typed a transcription of the statement. Both the tape and the transcription were received into evidence, and a tape recorder was made available to the jurors so that they could listen to the tape as well as read the transcription.

On appeal, defendant contests only the admission in evidence of the transcribed statement, and does not challenge admission of the tape from which the transcription was made. Defendant contends that sufficient foundation for admission of the transcription was not established because the stenographer who made the transcription was not identified and did not appear at trial, the stenographer did not certify the accuracy of the transcription, and the police officer who took the statement from the defendant was not present while the stenographer was typing

the transcription. The defendant did not sign the transcription after it was typed. Defendant argues that an oral confession which has been reduced to writing by a third person is not admissible in evidence unless signed by the defendant, or otherwise acknowledged by him. See 29 Am. Jur. 2d, Evidence, § 532, p. 584.

This court has previously held that an oral statement taken down and reduced to writing by a stenographer is inadmissible when it is not signed or acknowledged by the defendant, and cannot be tested for accuracy by examination of the stenographer at trial. State v. Harding, 184 Neb. 159, 165 N. W. 2d 723 (1969). Admission of such a written statement without the presence of the stenographer at trial violates a defendant's right to confront and cross-examine witnesses. That rule, however, is not applicable under the facts of the present case. Defendant does not contest the admission of the tape made at the time of his statement, and a tape recording of relevant and material conversations is admissible as evidence. State v. Lynch, 196 Neb. 372, 243 N. W. 2d 62 (1976). The police officer who took the statement identified the tape and testified that it accurately reflected the defendant's statement. He further testified that he had compared the tape and the transcription and found the transcription to be accurate. Both the tape and the transcription were received in evidence and were available for the jury's consideration. The police officer who took the taped statement was available for cross-examination by the defendant.

In such circumstances, it was not error to receive the transcription in evidence since its accuracy was established by testimony of the officer who took the statement. Furthermore, an examination of the tape and transcription shows that the transcription in fact accurately reflects the statement on the tape. Since the original tape recording was admitted in

evidence as required by section 27-1002, R. R. S. 1943, it was not error to also admit a transcription of the tape. Furthermore, defendant has made no showing that he was prejudiced in any way by admission of the transcription, which included nothing more than what was included on the tape. Therefore, this assignment of error is without merit.

. Defendant next contends that it was error to admit in evidence the testimony of Wilma Knaub, defendant's mother-in-law, who testified that the defendant told her that "he didn't mean to shoot her [Patty], he just meant to nick her." Defendant argues that he was charged only with shooting with intent to kill under section 28-410, R. R. S. 1943; and that the statement did not tend to prove him guilty of the crime charged, but of shooting with intent to wound, which is also a crime under section 28-410, R. R. S. 1943. He relies on the general rule that evidence of other crimes than that with which the accused is charged is not admissible in a criminal prosecution. State v. Brown, 190 Neb. 96, 206 N. W. 2d 331 (1973).

Section 28-410, R. R. S. 1943, makes it unlawful to maliciously shoot, stab, cut, or shoot at any other person with the intent to kill, wound, or maim such person. This court has previously held that shooting with intent to kill and shooting with intent to wound are independent substantive crimes of equal rank. Tasich v. State, 110 Neb. 709, 194 N. W. 813 (1923). Defendant relies on Tasich to support his argument that the statement testified to by Wilma Knaub was proof of a crime other than the one with which he was charged, and that it was therefore not relevant and should not have been admitted in evidence.

Although defendant's argument is somewhat ingenious, it is without merit in this case. It is proper for the prosecution to put in evidence all relevant facts and circumstances which tend to establish any of the elements of the crime charged, even though such facts and circumstances may prove or tend to

prove that the defendant committed other crimes. The problem concerning the admissibility of evidence of other offenses is an aspect of the broad general problem of relevancy, and generally the test of admissibility of such evidence is whether the evidence is relevant and material to any issue on trial. State v. Brown, *supra*. Section 27-401, R. R. S. 1943, provides that: "Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

In the present case, one of the primary issues on trial was whether the defendant deliberately shot Patty, or whether the shooting was accidental. In addition there was a further issue as to whether he shot Patty with intent to kill her. The statement objected to by the defendant was relevant to the factual issue of how the shooting occurred, and whether the shooting was deliberate or accidental. "It is proper in a criminal case to show defendant's conduct, demeanor, statements, attitude, and relation toward the crime. These are circumstances to be shown." State v. Meints, 189 Neb. 264, 202 N. W. 2d 202 (1972). The purpose of the rule which prohibits admission in evidence of other wholly independent offenses is to prevent the jury from convicting the defendant because he has a propensity for crime in general, and not because he is guilty of the offense with which he is charged. State v. Moore, 197 Neb. 294, 249 N. W. 2d 200 (1976). The statement received in evidence in this case was not admitted to show that the defendant had a propensity for crime in general, or was guilty of a wholly independent offense. Its purpose was to show defendant's conduct, statements, attitude, and relation to the crime charged. Although it did not specifically prove that the defendant shot Patty with intent to kill, it was relevant to the issue of whether the shooting was deliberate,

which was in dispute since defendant claimed that the shooting was accidental. Therefore the testimony was properly received in evidence.

Defendant's final contention is that it was error not to disqualify Patty as a witness and to receive her testimony at the trial. As previously stated, defendant moved before trial to disqualify her as a witness on the grounds that she had no recollection of the shooting and that the probative value of her testimony would be far outweighed by the prejudicial and inflammatory effect of her presence in court upon the jury. The trial court overruled the motion before trial, stating: "* * * I don't know what this witness will testify to except what counsel has informed me, that she has no recollection of the event. This may well be. However, there are other factors and it's a question of whether the testimony has probative value. I refuse to prejudge every witness."

The defendant renewed his motion to disqualify Patty from testifying during trial immediately prior to her taking the witness stand. The trial court again overruled the motion, and stated: "I admonish counsel for the State and the Defendant that if there are serious problems with the demeanor of this witness, because of whatever limited probative value this is, I will have no hesitancy in shutting off testimony and continuing with the trial if this is going to cause a serious problem in front of the jury." Patty's entire testimony, as recorded in the bill of exceptions, was as follows: "Q. Would you state your name, please? A. Patty — His name, (indicating). I don't know. Q. Do you have, Patty, any recollection at all of what occurred on the night of the 28th of January, 1976, or early in the morning of January 29? A. No. I don't. Q. Nothing whatever, is that correct? A. Well, I don't remember that day at all."

Defendant's contention that the apperance of Patty as a witness and her testimony constitute re-

versible error is twofold. First, he contends that she was incompetent as a witness. Secondly he argues that her appearance and testimony inflamed and prejudiced the members of the jury against him.

Defendant's contention that Patty was not competent to be a witness is not supported by the record. Section 27-601, R. R. S. 1943, provides that every "person is competent to be a witness except as otherwise provided in these rules." Section 27-602, R. R. S. 1943, provides that a "witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter." Defendant did not object to Patty's appearance as a witness on the general ground of incompetency. She was duly sworn as a witness, and defendant did object to her being sworn on the ground that she was unable to understand the oath. Patty did not testify in regard to the shooting, but stated that she could not remember the day on which it occurred. Patty was clearly competent to so testify, and she did not testify to any matter of which she had no personal knowledge.

The primary contention of the defendant is not that Patty was incompetent to testify as she did, but that her mere presence before the jury inflamed and prejudiced it against the defendant. He contends that a medical doctor, a witness for the State who testified prior to Patty's testimony, had already stated that Patty could not remember the day of the shooting, and that therefore there was no need for Patty to take the stand and herself state that she had no recollection; and that her testimony was irrelevant and immaterial. The State argues that the jury was entitled to hear Patty's testimony in order to understand why the victim of an alleged crime was not able to state what happened on the night it occurred.

Determination of the admissiblity of evidence gen-

erally rests within the sound discretion of the trial court. State v. King, 197 Neb. 729, 250 N. W. 2d 655 (1977). The underlying principle of relevance is the logical, probative value of the evidence. State v. Wright, 189 Neb. 783, 205 N. W. 2d 351 (1973). Under the particular facts of the present case, where the only eyewitnesses to the alleged crime were the defendant and Patty, we cannot say that it was an abuse of discretion on the part of the trial court to permit Patty to testify that she had no recollection of the shooting. The jury may have speculated as to why Patty did not testify if it had not been apprised that she could not recall the shooting; and could have drawn inferences, favorable or unfavorable to the defendant, if no explanation were given it. Although the medical doctor who testified stated that it was probably impossible for Patty to have any recollection of the shooting, he had not examined her for a substantial period before trial, and could not testify in regard to her ability to remember at the time of trial.

We disagree with defendant's contention that Patty's appearance as a witness and her testimony should have been excluded because its probative value was substantially outweighed by the danger of unfair prejudice. See, § 27-403, R. R. S. 1943; State v. Fleming, 182 Neb. 249, 154 N. W. 2d 65 (1967). The testimony itself was in no way prejudicial because it consisted only of a statement that Patty had no recollection of the day of the shooting. The record does not indicate that her appearance as a witness, which was not in and of itself evidence, was prejudicial or inflammatory. Testimony at trial made the jury aware, prior to her appearance, that she had been shot in the head, that the bullet had lodged in her brain, and that she had suffered partial paralysis and a speech impediment. In order to minimize any possible effect on the jury which could be caused by her appearance as a witness, the trial court had

Patty take and leave the witness stand outside the presence of the jury. Even if it were assumed that Patty's appearance as a witness and her testimony were irrelevant, the admission of irrelevant evidence is not reversible error unless there is prejudice to the defendant or he is prevented from having a fair trial. State v. Gurule, 194 Neb. 618, 234 N. W. 2d 603 (1975). Under circumstances, where the jury was aware of the nature and extent of Patty's injuries prior to her appearance as a witness, her appearance and testimony did not constitute prejudice to the defendant or prevent him from having a fair trial.

For the reasons given above, the defendant's assignments of error are without merit, and therefore the judgment of the District Court is affirmed.

AFFIRMED.