STATE OF NEBRASKA, APPELLEE, V.
HEZEKIAH PITTMAN, APPELLANT.

313 N.W.2d 252

Filed December 4, 1981.   Nos. 44126, 44127.

Paul E. Watts of Watts & Moran for appellant.

Paul L. Douglas, Attorney General, and Harold Mosher for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

BOSLAUGH, J.

The defendant was charged, in separate informations, with three counts of robbery and three counts of use of a firearm in the commission of a felony. After a consolidated trial to a jury, the defendant was found guilty on all counts. He was sentenced to 15 to 30 years' imprisonment on each robbery count, the sentences to run concurrently with each other, and 5 to 10 years' imprisonment on each use of a firearm count, the sentences

to run concurrently with each other but consecutively to the robbery terms. The defendant has appealed and has assigned as error the failure to sustain his motion to suppress; the insufficiency of the evidence to sustain his conviction; the failure to sustain his motion for a new trial for newly discovered evidence; and the failure to grant a mistrial because of prosecutorial misconduct.

The robberies involved in these cases occurred on May 30, 1980, at Godfather's Pizza at 99th and Q Streets; on June 6, 1980, at the Venice Inn at 69th and Pacific Streets; and on June 7, 1980, at Mr. Steak at 1300 South 72nd Street, all in Omaha, Nebraska.

Charles Elsinger, an accomplice of the defendant who had previously pleaded guilty to charges based on these robberies, testified for the State. Elsinger testified that the defendant had participated in all three robberies by helping "set me up" in that he had showed Elsinger where the restaurants were and had described their respective layouts to him; that the defendant gave Elsinger the pistol used in the Venice Inn robbery; and that he and the defendant had split the "take" from each robbery. Elsinger's sister Tracy also testified for the State and corroborated Elsinger's testimony in some respects concerning the Godfather's robbery.

Elsinger and Tracy and four other persons were arrested at Bart's Motel in Council Bluffs on June 18, 1980. At the time of the arrest, a .20-gauge sawed-off shotgun was found in their motel room. Elsinger testified the shotgun was used in the Mr. Steak robbery. Elsinger and Tracy gave statements to the Omaha police implicating the defendant in the robberies. The defendant was arrested on July 31, 1980.

The robberies were proved by independent witnesses who had been present at each of the restaurants at the time the robberies occurred. The testimony of Elsinger implicated the defendant in each of the robberies. The evidence was clearly sufficient, if believed, to sustain a finding of guilty on all counts beyond a reasonable doubt.

After the defendant had been arrested, he was questioned by several police officers about the robberies. In support of a motion to suppress, the defendant testified that the officers had ignored his requests to consult a lawyer before proceeding further. The officers testified that the defendant had only mentioned an attorney once, and that was in the form of a question, after he had been advised of his rights and had stated that he was willing to make a statement. According to the officers' testimony, the defendant said something to the effect that maybe he ought to talk to an attorney. At that point Officer O'Connor, who was in charge of the interrogation, told the defendant that they would stop questioning him and picked up his papers and began to leave the room. The defendant then initiated some conversation with the officers with regard to his being "railroaded" by the Elsingers, and the officers responded that they had only one side of the story and would be happy to hear the defendant's side. According to the officers, the defendant then began to discuss the matter with them and responded to their questions, never again mentioning an attorney. The trial court found that the defendant had waived his rights and his statements to the police were voluntary and admissible.

In *Edwards v. Arizona*, ___U.S.___, 101 S. Ct. 1880, 1885, 68 L. Ed. 2d 378 (1981), the U.S. Supreme Court held: "[A]n accused, such as [petitioner], having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, *unless the accused himself initiates further communication, exchanges or conversations with the police.*" (Emphasis supplied.) In *United States v. Grant*, 549 F.2d 942, 946 (4th Cir. 1977), the U.S. Court of Appeals for the Fourth Circuit held: "[*Miranda* does not] protect an accused, even though he has requested counsel, from a spontaneous admission made under circumstances not induced by the investigating officers *or during a conversation not initiated by the officers.*" (Emphasis

supplied.)

In the present case, upon conflicting evidence, the trial court found that the defendant had not invoked his right to counsel but had knowingly and intelligently waived the right.

When the evidence upon a motion to suppress is in conflict, the decision of the trial court will not be reversed in the absence of an abuse of discretion. *State v. Weinacht*, 203 Neb. 124, 277 N.W.2d 567 (1979). See, also, *State v. Prim*, 201 Neb. 279, 267 N.W.2d 193 (1978).

The defendant next contends that the trial court erred in overruling his motion for new trial based upon newly discovered evidence. The newly discovered evidence was a claim that Charles and Tracy Elsinger had "recanted" their testimony. The trial court found that the Elsingers had not recanted their testimony to the extent that a new trial was required, and overruled the motion.

The evidence at the hearing on the motion for new trial consisted of a letter from Tracy Elsinger to the defendant's mother, and an affidavit of John North. North had been hired by the defendant's mother to investigate the matter after she had received Tracy's letter. North's affidavit was to the effect that Charles Elsinger had told some person at the state penitentiary that he, Elsinger, had lied under oath at the defendant's trial when he testified that he threw a gun into the Missouri River. The affidavit also stated that Elsinger may have implicated the defendant in more robberies than he was actually involved in. The letter from Tracy Elsinger did not actually recant her testimony, but rather stated that she had been pressured into testifying.

In *State v. Record*, 208 Neb. 90, 92, 302 N.W.2d 367, 368 (1981), we recently stated: "Newly discovered evidence must be of such a nature that if it had been offered and admitted at the former trial it probably would have produced a substantially different result." *State v. Hortman*, 207 Neb. 393, 397, 299 N.W.2d 187, 189

(1980), states: "We have stated that new evidence tendered in support of a motion for new trial on the ground of newly discovered evidence must be so potent that, by strengthening evidence already offered, a new trial would probably result in a different verdict."

Tracy Elsinger had testified under oath at the trial that she had not wanted to testify, but did so pursuant to a subpoena. Nothing in her letter demonstrates newly discovered evidence which would require that a new trial be granted. The matters in North's affidavit went mainly to the credibility of Charles Elsinger. In *State v. Mays*, 205 Neb. 730, 732, 289 N.W.2d 545, 547 (1980), this court stated: "It would appear that all the evidence maintained by Mays to be newly discovered evidence at best goes to the credibility of one of the State's witnesses . . . . That fact in and of itself is not sufficient to justify the granting of a new trial." A refusal to grant a new trial based on newly discovered evidence will not be reversed absent an abuse of discretion. There was no abuse of discretion here.

The defendant contends the trial court erred in overruling an objection as to foundation made to the offer of the gun used by Elsinger in the Venice Inn robbery. The evidence of the State traced the gun back to the defendant through the defendant's father.

Charles Elsinger stated that he had used the gun in the Venice Inn robbery, and that it had been supplied to him by the defendant. After the robbery, Elsinger left the gun under the seat of the defendant's automobile. An eyewitness to the Venice Inn robbery testified that the gun was used in the Venice Inn robbery. Officer O'Connor testified that he obtained the gun from the defendant's father on August 7, 1980. O'Connor further testified that he then took the gun to police headquarters, put it in a property envelope, and left it locked in the property room. The gun was removed twice, once for firearms examination and once when O'Connor showed the gun to the eyewitness to the robbery. At all other times the gun remained locked

in the property room at police headquarters until O'Connor brought it to court for the trial.

In *State v. Stickelman*, 207 Neb. 429, 439, 299 N.W.2d 520, 526 (1980), we stated: "[A]n exhibit is admissible, so far as identity is concerned, when it has been identified as being the same object about which the testimony was given." The foundation here was sufficient.

The defendant's claim of error based on prosecutorial misconduct relates to a number of incidents which occurred during the trial. The principal claim relates to testimony by Charles Elsinger that he wanted to be imprisoned in a different institution.

The testimony of Elsinger about his wish to serve his sentence in another state appeared in the context of the prosecutor's questions about inducements which might have been offered to Elsinger to encourage him to testify for the State. No reference was made to possible incarceration of the defendant, and the defendant's name was not mentioned during the questioning.

The evidence was proper and there was no prejudice to any substantial right of the defendant. The motion for a mistrial was properly overruled.

There being no error, the judgment is affirmed.

AFFIRMED.