STATE OF NEBRASKA, APPELLEE, V. ALEXIUS L. BIDEAUX, APPELLANT.

365 N.W.2d 830

Filed April 12, 1985.   No. 84-172.

Kirk E. Naylor, Jr., and Mark M. Sipple of Luckey, Sipple & Hansen, for appellant.

Paul L. Douglas, Attorney General, and Lynne R. Fritz, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

HASTINGS, J.

Following a jury trial, the defendant was convicted of the felony offense of arson and was sentenced to a term of imprisonment for 18 months. He has appealed to this court and details the following assignments of error: (1) The court erred in overruling defendant's foundational objection to an opinion given by the Schuyler fire chief as to the cause of the fire; (2) The court erred in overruling defendant's motions for mistrial; and (3) The court erred in overruling defendant's motion for a new trial based on newly discovered evidence. We affirm.

At approximately 11:49 p.m. on January 25, 1983, a fire was reported at Johnnies Steakhouse located in Schuyler and owned by the defendant. The fire ultimately destroyed the building and its contents. The defendant filed a claim with his insurance company and sometime later was charged with arson in connection with that fire.

The evidence adduced by the State tended to show that the fire was deliberately set, that it started shortly after the defendant himself had closed the restaurant for the evening, and that the steakhouse was not doing well financially. An examination of the record discloses that the evidence, if properly admitted and believed by the jury, was sufficient to support the conviction, and appellant makes no argument to the contrary.

Richard Kracl testified that at the time in question he had been chief of the Schuyler Volunteer Fire Department for 7 years and a member of the department for 16 years. He was the first member of the department to arrive at the fire. He had responded to the 11:49 p.m. alarm, and was followed by the

first assistant chief and the first fire engine, which appeared on the scene at 11:58 p.m. He described in some detail how he determined that no one was inside the building; made a visual inspection of the building by walking all around it; determined that there had been no forced entry of the building; noticed a large concentration of smoke coming from the furnace room; and opened the front door, located in the middle of the south end of the building, and found a large buildup of smoke and heat in that area.

Kracl's testimony, which is the subject of the first assignment of error, was as follows:

Q. Chief, based upon your years in the Schuyler Volunteer Fire Department, both as a fire fighter and as a chief, based on your observations at the scene of Johnnie's Steak House, based on your observations when you had gone by earlier that evening and based particularly on your observations at the south doorway when you opened it, based on your observations when the windows were knocked out, did you form an opinion at the time you were fighting this fire with respect to its cause or origin? That calls for a yes or no answer.

A. Yes, I did.

Q. What was that opinion, sir?

MR. NAYLOR: I would object. Lack of foundation.

THE COURT: I'm going to overrule. He can answer the question.

THE WITNESS: I suspected arson at that particular time.

The defendant does not argue a lack of foundation, i.e., absence of underlying factors from which the conclusion could be made, but, rather, that the witness did not possess the necessary qualifications to qualify as an expert witness. There is no question but that this is a proper subject of expert testimony.

In the first place we do not believe a general objection on foundation reaches the qualifications of the witness. In *State v. Johnson*, 96 Idaho 727, 536 P.2d 295 (1975), the witness testified that he was the fire chief, had been with the department for 15 years, and had observed the fire. Over an objection that improper foundation had been laid, he was

permitted to give his opinion that gasoline was involved in the fire. In affirming the trial court the Supreme Court of Idaho stated:

> The admission of opinion testimony of an "expert" is largely discretionary with the trial court and the determination of its weight is largely a matter for the jury. [Citation omitted.] No issue was presented by appellant as to the qualifications of these witnesses, his objection being simply to the effect that the opinion was without foundation. Under these circumstances we find no error.

*Id.* at 732, 536 P.2d at 300. The reasoning supporting this conclusion is very sound; both the court and opposing counsel are entitled to know that the objection goes to the qualifications of the witness as an expert rather than to the factual foundation for the opinion.

Even assuming error, there was no prejudice. The witness Kracl went on to testify:

> Q. As the Fire Chief is it your responsibility to determine whether or not the Fire Marshal will be called to make an investigation?
> A. It is whoever is in charge.
> . . . .
> Q. I take it that you don't call the Fire Marshal regularly for all fires?
> A. No, I don't.
> Q. What basis do you use in determining whether or not the Fire Marshal ought to be called?
> A. I call the Fire Marshal when I cannot come up with a probable cause and when I suspect arson.
> Q. In this case you did call him?
> A. I did.

Earlier in the trial, Paul Lambrecht, a deputy state fire marshal, gave the following testimony without objection:

> Q. What is the Fire Marshal's responsibility in the State of Nebraska with respect to fire investigations?
> A. We assist Fire Chiefs in determining the causes of the fires.
> . . . .
> Q. Anytime there is a fire is the Fire Marshal's Office

called?

A. Only when the Fire Chief himself cannot find the cause or feels the fire is of suspicious origin.

. . . .

Q. What did you do?

A. Met with Deputy McDonald [of the fire marshal's office] at Johnnie's Steak House.

. . . .

A. He informed me of what time he was called and the information that he had and the people they have interviewed and talked to.

The only inference that can be drawn from the testimony of that witness was that the fire chief suspected arson. That is all to which Chief Kracl testified, and it was cumulative of the testimony of the other witnesses.

The second assignment of error deals with two motions for mistrial made by the defendant. The first involved a statement by the trial judge, which it is claimed misstated the record.

During closing argument, defense counsel stated: "Then we move on to the kitchen. At long last they [State's witnesses] finally admit to us that those burns in that kitchen area could be caused by spilled grease. That was like pulling teeth, but they finally admitted it." The prosecutor interposed the following: "I object to the extent he misstates the evidence on all of the kitchen area. It was only in one of the kitchen areas." The ruling of the court followed: "The jury shall not consider this. I believe the evidence does show in some of the kitchen areas, counsel."

It is somewhat difficult to follow defendant's argument in that he states in his brief at 14, "While the record does not show to which area of the kitchen defense counsel was pointing, the testimony of the State's expert . . . would tend to provide evidence in support of counsel's argument that burns in the kitchen area could have been caused by spilled grease."

The record supports the statement of the trial judge. Defense counsel inquired of a State's witness, Frederick King, "[I]f that grease got loose on the floor in the kitchen area . . . it could cause burning on the tiles consistent with that area you found around the doorway and in the area of the table, could it not?"

to which the witness replied, "It's a possibility." The effect of the trial court's ruling was in fact to advise the jury to disregard both the overbroad generalizations of the "kitchen area" by the defense and the underinclusive characterization of "one of the kitchen areas" by the prosecutor.

The second objection relating to defendant's motion for mistrial occurred during the State's closing argument:

> MR. O'BRIEN: . . . And how did the office burn? Do you remember the testimony? All of the ducting work out of that furnace is in the south end, every bit of it. We have got fire walls, concrete block fire walls between there and the office. We have a distance with little or no damage. We have no damage on this side. We have no damage on this side. The roof caves in but no damage except for the complete and total destruction of the office.

> MR. NAYLOR: Maybe it is my time to object. Not reflecting the evidence.

> THE COURT: I think the evidence does reflect it, counsel.

The defendant argues that this constituted an impermissible comment on the evidence by the trial judge, which tended to preclude the jury from reaching its own conclusion in that regard, and tended to discredit defense counsel in the eyes of the jury. He also insists that the trial judge's characterization of the evidence was wrong. We do not agree.

Defendant's objection goes to the prosecution's statement that, in effect, there was no damage on either side of the office, but complete and total destruction of the office.

The witness Eldon Boh had testified that the Mediterranean Room area, immediately to the west of the office, showed little damage. He said that probably 75 percent of the office had experienced total consumption. Also, he commented that the dining area adjacent to the office on the other side gave no indication of low burn. The witness repeated almost identical statements on cross-examination.

In light of the record we cannot say that the prosecuting attorney misstated the record. Furthermore, when counsel objects to a statement as "not reflecting the evidence," had the trial judge replied with a simple "Overruled," that is

tantamount to saying, "I think the evidence does reflect it, counsel."

We agree with the defendant that the court should refrain from commenting on the evidence or making remarks prejudicial to a litigant or calculated to influence the minds of the jury. *State v. Goff*, 174 Neb. 548, 118 N.W.2d 625 (1962); *Moore v. State*, 147 Neb. 390, 23 N.W.2d 552 (1946). Both of those cases were reversed for additional reasons than misconduct of the court. In the one case it was found to be prejudicial error not to have submitted lesser-included offenses, and in the other there were unconstitutional searches and seizures.

In any event, in *Goff* the trial court overruled defense counsel's motion to sequester witnesses, and in doing so stated, "I think perhaps it is nonsense. I have no patience with that type of motion whatsoever. However, in this case under the existing circumstances since the defendant feels he is being persecuted so unfairly I am going to give him the benefit of the motion and sustain the motion." 174 Neb. at 557, 118 N.W.2d at 631.

In *Moore* defense counsel interrupted examination of the State's witness in order to interpose an objection and was told by the trial judge, "Wait a minute. We will try this lawsuit the way it should be tried and there will be no more of that *shyster stuff*. Answer that question." (Emphasis in original.) 147 Neb. at 397, 23 N.W.2d at 556. A short time later, before the witness had answered a question favorable to the defendant but unfavorable to the State, the judge stated: "Wait a minute, that will all go out and the jury will ignore it. . . . Answer the question and tell the truth because you are not interested in this prosecution. This is the State of Nebraska, and you remember what I tell you or I will send you to jail. . . ." *Id.*

The "comments" of the trial judge in the instant case certainly did not rise to the level of those quoted above, and were not prejudicial to the defendant. This is especially true when considering the remarks of the prosecutor immediately following the overruling of defendant's motion:

> Ladies and gentlemen, you listened to evidence, you recall the evidence and you pay attention to what you heard and saw. You do it while the Court proceeding went

forward. Do you think that? Is that what the witnesses said, or is that not what the witnesses said? You make your judgments based on that, ladies and gentlemen.

Finally, on the second general assignment of error, defendant complains that he should have been granted a mistrial because a witness was permitted, over objection as to relevance, to testify as to defendant's drinking of alcoholic beverages on the night of the fire, and as it progressed. Lynn Steffensmeier, an employee of the defendant, testified that at around 12:45 a.m., during the course of the fire, she had occasion to see the defendant drinking. Over objection by the defendant, she was permitted to testify that the defendant became intoxicated. It is the defendant's contention that his objection and motion for mistrial should have been sustained because the evidence was not relevant as to whether the defendant set this fire.

The State contends that this evidence demonstrated the defendant's disinterest in monitoring the efforts of the firefighters to save his building, because he had intentionally set the fire for the purpose of collecting insurance money. This would be a permissible inference to draw, in which event the evidence was relevant. " 'It is proper in a criminal case to show defendant's conduct, demeanor, statements, attitude, and relation toward the crime. These are circumstances to be shown.' " State v. Martin, 198 Neb. 811, 819, 255 N.W.2d 844, 849 (1977).

His conduct perhaps could also show remorse over the loss of his building and business, which would be favorable to the defendant's case. At the very worst, if completely irrelevant, it was harmless error not requiring reversal because it did not affect the substantial rights of the defendant. State v. Rathburn, 195 Neb. 485, 239 N.W.2d 253 (1976). We do not believe that the trial court abused its discretion in allowing such evidence to be received. State v. Fries, 214 Neb. 874, 337 N.W.2d 398 (1983).

The defendant's final assignment of error is that the trial court incorrectly overruled the motion for a new trial based on newly discovered evidence. After the jury verdict was rendered and prior to sentencing, the defense moved for a new trial based on the following information. During the day of January 25,

1983, some 12 hours *before* the fire occurred, a customer in Johnnies Steakhouse in *Columbus*, Nebraska, commented that Johnnies in *Schuyler* had burned down the previous night. Additionally, a couple, who very generally matched the description of the customer and his companion, were seen in Johnnies in Schuyler between 9 and 9:45 p.m. on the same day.

"A motion for new trial on the ground of newly discovered evidence is addressed to the sound discretion of the trial court and, unless an abuse of discretion is shown, its determination will not be disturbed." *State v. Record*, 208 Neb. 90, 92, 302 N.W.2d 367, 368 (1981).

Neb. Rev. Stat. § 29-2103 (Reissue 1979) provides in pertinent part:

> In any criminal case where it shall be made to appear upon the motion of the defendant for a new trial, supported by affidavits, depositions or oral testimony, that the defendant has discovered new evidence material to his defense which he could not with reasonable diligence have discovered and produced during the term within which the verdict upon which he was sentenced was rendered, the district court may set aside such sentence and grant a new trial . . . .

This court has stated that new evidence in support of such a motion " 'must be so potent that, by strengthening evidence already offered, a new trial would *probably* result in a different verdict.' " (Emphasis supplied.) *State v. Pittman*, 210 Neb. 117, 121, 313 N.W.2d 252, 256 (1981). See, also, *State v. Hortman*, 207 Neb. 393, 299 N.W.2d 187 (1980).

The defendant's evidence offered in support of his motion falls far short of the requisite showing of a probable different result. If credible, it tends to show no more than that someone else knew in advance of the intentional burning of the restaurant. Rather than bolstering Mr. Bideaux's defense, it strengthens the evidence proffered by the State indicating arson. The ruling of the trial court was well within the bounds of its discretion and consequently will not be disturbed.

The judgment and sentence of the district court are affirmed.

AFFIRMED.

GRANT, J., dissenting.

I respectfully dissent on two points. First, I believe that the testimony of the chief of the Schuyler Volunteer Fire Department was inadmissible as that of an expert when he testified that his opinion as to the cause of the fire was that "I suspected arson at that particular time." While defendant did not move to strike the answer, I believe that the answer was so prejudicial as to require reversal. If the chief's *opinion* was that the cause of the fire was arson, a different question would be presented. I do not reach that question. If in a criminal case an alleged expert witness is permitted to testify that at the time of a fire, after making observations about the affected building and the nature of the fire, he *suspects* arson, we have opened the door to a flood of expert suspicions that are particularly prejudicial in a criminal case.

The danger of allowing this sort of answer is pointed out by the next question propounded by the State's counsel: "Why was it that you had that suspicion?" This question was answered by the chief, "Because of the involvement of the building in the elapsed time that I was there."

The word "suspect" is defined in part in Black's Law Dictionary 1297 (5th ed. 1979) as follows: "To have a slight or even vague idea concerning;—not necessarily involving knowledge or belief or likelihood." "Suspicion" is defined in the same dictionary at 1298 as follows: "The act of suspecting, or the state of being suspected; imagination, generally of something ill; distrust; mistrust; doubt. The apprehension of something without proof or upon slight evidence. Suspicion implies a belief or opinion based upon facts or circumstances which do not amount to proof."

I do not believe that even an expert's suspicions have any place in a criminal trial. In none of the chief's testimony is there any *opinion*, firm or otherwise, as to the cause of the fire. If "suspicions" are held admissible in a criminal case, it seems that the day is not far distant when in a civil case an expert will testify that he "suspects negligence." I believe that in this case the chief's "suspicions" are not admissible and that the admission of such testimony was reversible error.

I also believe that defendant's motion for mistrial because of the admission of evidence as to defendant's intoxication should have been granted. Defendant's employee Lynn Steffensmeier was called by the State apparently for the primary purpose of establishing that before the fire defendant did not order certain amounts of liquor usually ordered in the course of defendant's business. The employee also testified that while the fire was being fought, she saw defendant drinking at the home of a mutual friend with the employee and other friends. The employee was specifically asked, "Did you have occasion to observe him putting on his coat to leave?" Over defendant's objection, the witness answered, "When Lex [defendant] left, he had quite a bit of drink and he put his coat on inside out." This question as to a specific incident is irrelevant, immaterial, and prejudicial to defendant.

Further, the State then established that the employee-witness had in the past consumed alcohol, knew "the effect and feel that it gives you," had observed people that the witness knew were "under the influence," and knew how they would act. Having thus established the employee as an expert, the State inquired, "Would you have an opinion on whether or not the defendant was at that time that you are describing intoxicated?" Over objection, the witness answered, "Yes, I would say so." The subject of intoxication was then dropped.

Defendant contended that this evidence was not relevant. I agree. Relevant evidence is defined in Neb. Rev. Stat. § 27-401 (Reissue 1979) as evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." I cannot see how evidence of defendant's specific acts and intoxication at 4 a.m. the morning after the fire tends to prove anything except that defendant had consumed too much alcohol. The State's contention in its brief that this evidence "is consistent with the conclusion that [defendant] was disinterested in monitoring the firefighters' efforts since he had intentionally set the fire for the purpose of collecting insurance money" (Brief for Appellee at 14) only shows that inferences descend to suspicions when based on irrelevant facts. An equally plausible "inference" would be that

defendant was so distraught at seeing his business go up in flames that he, unfortunately, turned to strong drink. Since there was no other evidence as to the reason for defendant's drinking, I do not believe that the court should let a jury flip a coin, in effect, to decide what that behavior means.

The difficult question to me in this connection is whether the admission of such evidence was prejudicial. I believe that the evidence is prejudicial, given the growing, warranted concerns of this State and its individual citizens as to drinking alcoholic liquor and driving and what I feel is the inevitable spread of those concerns to many aspects of drinking at all. There is no lawyer worth his salt who does not delight in establishing that the opposing party has become intoxicated in any connection with any incident before any jury. It is the duty of the courts to keep such evidence from the jury unless the intoxication is relevant to the issue at hand.

The State, in its brief, cites *State v. Martin*, 198 Neb. 811, 255 N.W.2d 844 (1977), as holding that it is proper in a criminal case to show circumstances such as defendant's conduct, demeanor, statements, and relation to the crime. *Martin* does state that, but that case specifically holds only that a statement made by defendant to a victim's mother that "he [defendant] didn't mean to shoot her [the victim], he just meant to nick her," is admissible to show a shooting was deliberate, not accidental. That does not concern "demeanor" at all.

The case is close. Defendant's conviction is based on circumstantial evidence proved by expert witnesses and is disputed by defendant by evidence including that of an expert witness. I would reverse and remand for a new trial.

CAPORALE, J., dissenting.

I join in that portion of Judge Grant's dissent which characterizes the evidence of defendant's intoxication as inadmissible.

Moreover, I cannot agree with the majority's statement that the trial judge's comment during the prosecutor's closing argument that the judge thought "the evidence does reflect it, counsel," is "tantamount" to, or the equivalent of, saying "Overruled." The latter suggests only that there is no merit to the objection, perhaps only because different inferences could

be drawn from the evidence. The former implies that the judge has weighed the evidence and has concluded the fact to be as stated by the prosecution. Those are obviously two different things; thus one cannot be the equivalent of the other.

In reversing a condemnation award in *Langdon v. Loup River Public Power District*, 144 Neb. 325, 13 N.W.2d 168 (1944), in part because of the trial judge's misconduct, this court recognized that a party is entitled to have the jury pass on the evidence without interference by the trial judge. Such a concept can be no less important in a criminal trial than it is in a civil one.

To suggest that the prosecutor's admonition to the jury that it make its own judgment on the evidence cures any error arising from the judge's comment is to ignore the realities of jury trials. As noted in *Hansen v. State*, 141 Neb. 278, 3 N.W.2d 441 (1942), jurors are alert to the judge's attitude respecting the merits of a case, particularly in criminal trials.

During the course of a trial, the judge should refrain from making remarks which may have a tendency to influence the jury. *Pitt v. Checker Cab Co.*, 217 Neb. 600, 350 N.W.2d 507 (1984). He or she should be ever mindful that a judge's role is to govern a trial in such a manner that each party is assured fairness. Persuasion is the task of advocates, not of jurists.

As Judge Grant has observed, this case rests upon circumstantial evidence which presents close questions of fact. I cannot conclude that the admission of evidence concerning defendant's intoxication and the trial judge's editorial comment did not prejudice the defendant. I also would reverse and remand for a new trial.