**Hezekiah PITTMAN, Jr., Appellant,**

v.

**Charles J. BLACK, Warden, Appellee.**

No. 84–1887.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 11, 1985.

Decided June 18, 1985.

Rehearing and Rehearing En Banc Denied July 18, 1985.

Richard Douglas McClain, Lincoln, Neb., for appellant.

Harold Mosher, Asst. Atty. Gen., Lincoln, Neb., for appellee.

Before LAY, Chief Judge, and HEANEY and FAGG, Circuit Judges.

FAGG, Circuit Judge.

Hezekiah Pittman Jr. appeals from the district court's denial of his habeas corpus petition filed under 28 U.S.C. § 2254. Pittman raises a number of arguments in his petition, the only one with any substance being that evidence introduced against him at his criminal trial was obtained in violation of his constitutional rights under the fifth, sixth, and fourteenth amendments. We reject Pittman's argument and also summarily reject the other arguments he raises in his habeas petition. Accordingly, we affirm.

Pittman was tried and convicted in Nebraska state court of three counts of robbery and three counts of use of a firearm in the commission of a felony. His conviction on all counts was sustained on appeal to the Nebraska Supreme Court. *See State v. Pittman*, 210 Neb. 117, 313 N.W.2d 252 (1981).

Pittman contests the introduction at trial of statements made by him to police officers following his arrest and invocation of his right to counsel. Although Pittman gives a differing version of the facts leading up to his statements, we defer to the factual findings of the state court. "In reviewing a petitioner's state court conviction, a federal court must accord the state court findings of fact a 'high measure of

deference.'" *Graham v. Solem,* 728 F.2d 1533, 1540 (8th Cir.) (en banc) (quoting *Sumner v. Mata,* 455 U.S. 591, 598, 102 S.Ct. 1303, 1307, 71 L.Ed.2d 480 (1982) (per curiam)), *cert. denied,* —— U.S. ——, 105 S.Ct. 148, 83 L.Ed.2d 86 (1984). The federal court's role is simply to ascertain whether the state court's findings of fact have fair support in the record. *Id.* at 1540–41. Credibility determinations are left for the state courts to decide. *Id.* We believe the state court's findings of fact have fair support in the record.

Pittman was arrested and questioned by police officers about a number of robberies. Pittman was informed of his Miranda rights and indicated that he was willing to make a statement. After a period of time, Pittman stated that it appeared he was being railroaded and perhaps he should talk to an attorney. At that time, Officer O'Conner, who was in charge of the interrogation of Pittman, told him that they would stop the questioning. As O'Conner gathered his papers and prepared to leave the room, Pittman asked the interrogating officers whether it appeared the other suspects were trying to put all of the blame on him. The officers responded that they only had one side of the story and would be glad to hear Pittman's side. Pittman then discussed the robberies with the officers and responded to their further interrogation. At no time did he reiterate a request for counsel.

The Nebraska state court admitted Pittman's statements at trial after determining that he had waived his rights and voluntarily made the statements to police officers. After being denied relief by the Nebraska Supreme Court, Pittman sought habeas relief in the United States District Court. The district court denied Pittman's habeas petition.

Pittman appears to be relying on *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), for his claim that introduction at trial of the statements made following his invocation of counsel violates his constitutional rights. In *Edwards,* the Supreme Court held that once

an accused has invoked his right to have counsel present during custodial interrogation, he cannot be subjected to further interrogation in the absence of counsel "unless the accused himself initiates further communication, exchanges, or conversations with the police." *Id.* at 484–85, 101 S.Ct. at 1884–85. If the accused is subjected to interrogation after initiating further communications with the police, the question becomes whether the accused knowingly and intelligently waived his right to counsel and right to silence. *Id.* at 485–86 and n. 9, 101 S.Ct. at 1885 and n. 9.

*Edwards* was decided while Pittman's appeal was pending before the Nebraska Supreme Court. The district court, relying on *Solem v. Stumes,* 465 U.S. 638, 104 S.Ct. 1338, 79 L.Ed.2d 579 (1984), in which the Supreme Court held that *Edwards* should not be applied retroactively in collateral attacks on criminal convictions, determined that the *Edwards* holding was not applicable to Pittman's case. It found, however, that Pittman had initiated further conversation with the police following the invocation of his rights, and that under *Edwards* or prior law, Pittman made a knowing and intelligent waiver of his rights to counsel and silence.

Following the district court's denial of Pittman's habeas petition, the Supreme Court decided *Shea v. Louisiana,* —— U.S. ——, 105 S.Ct. 1065, 84 L.Ed.2d 38 (1985). In *Shea,* the Supreme Court determined that the *Edwards'* rule applies to cases pending on direct appeal at the time *Edwards* was decided. We, therefore, analyze Pittman's habeas claim under the rule announced in *Edwards.*

■ There is no question that after a period of interrogation, Pittman invoked his right to counsel. It is Pittman's contention on appeal that the *Edwards* rule was violated in this case because Pittman was not the initiator of further conversation with the police. According to Pittman, his question to the officers as to whether it appeared the other suspects were putting all of the blame on him operated to reinforce his request for counsel. It is Pitt-

man's contention that the officers initiated the conversation and interrogation following his invocation of counsel by saying that they only had one side of the story and would be glad to listen to Pittman's side.

We cannot agree with Pittman's position. Pittman's questioning of the officers as to whether it appeared he was being blamed by the other suspects "evinced a willingness and a desire for a generalized discussion about the investigation." *Oregon v. Bradshaw*, 462 U.S. 1039, 103 S.Ct. 2830, 2835, 77 L.Ed.2d 405 (1983). The remark "could reasonably have been interpreted by the officer[s] as relating generally to the investigation." *Id.* The comments were "not merely a necessary inquiry arising out of the incidents of the custodial relationship." *Id.*

Having agreed with the district court that Pittman initiated further conversation with police after invoking his right to counsel, we must determine whether Pittman made a valid waiver of his right to counsel and right to silence. *Id.; Edwards*, 451 U.S. at 486 n. 9, 101 S.Ct. at 1885 n. 9. The question becomes whether Pittman's waiver was knowing and intelligent under "the particular facts and circumstances surrounding the case, including the background, experience, and conduct of the accused." *Oregon v. Bradshaw*, 103 S.Ct. at 2835 (citations omitted). A circumstance to be considered is, of course, "the necessary fact that the accused, not the police, reopened the dialogue with the authorities." *Edwards*, 451 U.S. at 486 n. 9, 101 S.Ct. at 1885 n. 9.

We agree with the district court's conclusion that Pittman made a knowing and intelligent waiver of his Miranda rights. The evidence clearly shows that Pittman was fully informed of his rights, he understood them, and he expressly waived them prior to any questioning by the police. There is no evidence of any threats or promises on the part of the interrogating officers to induce Pittman to waive his rights. Following the invocation of his right to counsel, Pittman himself initiated further conversation with the police. The officers' response to Pittman's question and the interrogation following that response "would not have caused [Pittman] to forget the rights of which he had been advised and which he had understood moments before." *Wyrick v. Fields*, 459 U.S. 42, 103 S.Ct. 394, 397, 74 L.Ed.2d 215 (1982). Under these particular facts and circumstances, we have no reason to dispute the conclusion that Pittman made a knowing and intelligent waiver of his rights.

Pittman also claims that the statements were introduced in violation of his sixth amendment rights. We seriously doubt that Pittman's sixth amendment right to counsel had attached at the time of his statements. However, in a case like this, where the defendant has previously invoked his right to counsel, "the validity of any subsequent waiver of *either* the fifth or sixth amendment right to counsel is judged by essentially the same standard." *Fields v. Wyrick*, 706 F.2d 879, 881 (8th Cir.), *cert. denied*, — U.S. —, 104 S.Ct. 556, 78 L.Ed.2d 728 (1983). Under our previous analysis, Pittman waived any sixth amendment rights he had.

Pittman raises a number of other issues including: (1) that his conviction should be reversed for insufficiency of the evidence or he should at least receive a new trial because prosecution witnesses recanted their testimony and (2) that his rights to due process and equal protection were violated because of prosecutorial misconduct. We reject these and all other issues raised by Pittman as totally without merit. Pittman's habeas corpus petition is denied.

Affirmed.