STATE OF NEBRASKA, APPELLEE, V. MICHAEL D. BRIDGEMAN, APPELLANT.

323 N.W.2d 102

Filed August 13, 1982. No. 81-699.

Thomas M. Kenney, Douglas County Public Defender, and Stanley A. Krieger, for appellant.

Paul L. Douglas, Attorney General, and Dale D. Brodkey, for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, WHITE, HASTINGS, and CAPORALE, JJ.

McCOWN, J.

The defendant was tried, found guilty of burglary, and sentenced to imprisonment for not less than 1½ nor more than 2 years. The issue on appeal involves the admissibility of a confession of the defendant.

On June 29, 1981, at approximately 11:30 p.m., the sheriff's office received a report of a burglary in progress at a service station in Omaha. A deputy responded to the call. When he arrived at the scene a black male walking through the parking lot of the service station saw the officer, dropped the car battery he was carrying, and fled. The deputy chased the man on foot, but lost him.

At approximately 1:30 a.m. Sergeant Whitmore of the sheriff's department picked up the defendant in an industrial area of west Omaha. The defendant fit the description of the man the deputy had seen at the service station. Sergeant Whitmore did not place the defendant under arrest at that time but took him to the sheriff's headquarters so the defendant could use the telephone to arrange a ride home. When they arrived at headquarters Sergeant Whitmore checked a reproduction of a footprint taken at the scene of the service station burglary and noted that it matched the defendant's shoes. He also noted that the defendant's pants and shoes were wet and grass stained and he had a hole in his jeans which might have been due to battery acid. The deputy who had investigated the burglary thought the defendant was the person he had chased from the service station area.

The defendant was then placed in an interrogation room and notified that he was under arrest for the service station burglary. At approximately 2 a.m. Sergeant Whitmore read the *Miranda* rights advisory form to the defendant. When the sixth and

final question of the advisory was read, "Knowing your rights in this matter, are you willing to make a statement to me now?" the defendant answered "No." Sergeant Whitmore then told the defendant that he thought he still had sufficient evidence to arrest the defendant for the burglary and outlined that evidence in detail. Sergeant Whitmore asked how the defendant's pants had become grass stained, how he had become so wet, and what the white marks on his pants were. The defendant said little, but claimed that he had done nothing and asked why he was being arrested. Thereafter, the defendant asked Sergeant Whitmore if things would be easier on him if he cooperated. The sergeant stated that was up to the county attorney, but the sergeant could make no promises. The defendant then agreed to make a statement. Sergeant Whitmore then changed the last answer on the rights advisory form from a "No" to a "Yes" and the defendant initialed the change.

There was no evidence of any break in the conversation between defendant's initial refusal to give a statement and the discussion of the evidence against him. Approximately 5 or 6 minutes passed between the time the defendant refused to make a statement and his agreement to do so. Since the defendant could not write, Sergeant Whitmore wrote the defendant's statement, read it back to him, and the defendant then signed the statement.

The defendant filed a motion to suppress the statement and an evidentiary hearing was held which developed the evidence outlined above. The motion to suppress was overruled and the statement was admitted at trial, along with the stipulated police reports.

*Miranda v. Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), requires that if the individual indicates in any manner at any time prior to or during questioning that he wishes to remain silent, the

interrogation must cease. Any statement taken after a defendant invokes his privilege cannot be other than the product of compulsion, subtle or otherwise. The *Miranda* rules were extended to the functional equivalent of interrogation in *Rhode Island v. Innis,* 446 U.S. 291, 100 S. Ct. 1682, 64 L. Ed. 2d 297 (1980). See, also, *Michigan v. Mosley,* 423 U.S. 96, 96 S. Ct. 321, 46 L. Ed. 2d 313 (1975).

The case of *In re Interest of Durand,* 206 Neb. 415, 293 N.W.2d 383 (1980), is determinative of the issues involved here. In that case a 23-minute interval between the initial negative answer to a question of whether the defendant was willing to make a statement and a subsequent consent to make a statement was occupied by showing the defendant police reports of other crimes of which defendant was accused. This court held that once *Miranda* warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner at any time prior to or during questioning that he wishes to remain silent, the interrogation must cease. The *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent.

In the case at bar, when the defendant refused to make a statement the officer not only did not cease all interrogation but, instead, continued to discuss the evidence, even to the extent of asking for explanations of the evidence. To permit the continuation of custodial interrogation or its functional equivalent after only a momentary cessation clearly violates the requirements of *Miranda v. Arizona, supra.* The District Court erred in refusing to grant the defendant's motion to suppress his statement. The judgment is reversed and the cause remanded for a new trial.

REVERSED AND REMANDED.