STATE OF NEBRASKA, APPELLEE, v. DENNIS LINN PARSONS, ALSO KNOWN AS PETER DENNIS LINN, ALSO KNOWN AS PETER PARSONS, APPELLANT.

328 N.W.2d 795

Filed January 14, 1983. No. 82-123.

Dennis Linn Parsons, pro se.

Paul L. Douglas, Attorney General, and Harold Mosher, for appellee.

KRIVOSHA, C.J., BOSLAUGH, MCCOWN, CLINTON, WHITE, HASTINGS, and CAPORALE, JJ.

CLINTON, J.

Defendant Dennis Parsons was charged under Neb. Rev. Stat. § 28-416 (Reissue 1979) with possession of marijuana with intent to distribute, found guilty by a jury, and sentenced to 18 months' to 4½ years' imprisonment. On appeal to this court defendant makes the following assignments of error: (1) The trial court erred in admitting into evidence incriminating statements defendant made to an officer prior to his receiving *Miranda* warnings. (2) The trial court erred in not granting various motions for a directed verdict, as the evidence was insufficient to establish the crime charged. We affirm.

Before considering the assignments of error, we will set forth a summary of the evidence. At the suppression hearing, Gerard Ruiz, a Nebraska State Patrol officer, testified that on October 8, 1981, at about 3 a.m., he picked up the defendant because he was walking on the Interstate. Defendant had been frantically waving to attract the officer's attention.

Defendant told Ruiz that he had been riding in a car with Marvin Huntington, that he jumped out when Huntington said the car held four containers of marijuana, and that Huntington then tried to run over him. Defendant asked the officer to help him; Ruiz took him to the Lexington Police Department so he could sleep, and dispatched information on Huntington's car. The officer testified that, as a sleeper, defendant was locked in a cell so that he could not walk about the jail. He was not under arrest.

About 6 a.m. Huntington was found and brought to the police station, where the defendant briefly confronted Huntington about the attempt to "run him over." The officer testified it appeared a fight might develop and the two were put in separate cells.

Bruce Haney, an investigator for the Nebraska State Patrol, testified that at about 9:20 a.m. he spoke with the defendant and at that time viewed him as the assumed victim. The subject matter of the interview was defendant's accusations against Huntington. After the interview, Haney, unsure if defendant was the victim or a suspect, told the defendant he must stay for further questions and returned him to his cell. Haney next interviewed Huntington, who denied having any marijuana and asked to talk to the defendant. Defendant was brought into the room and Huntington asked the defendant if he had told Haney that there was marijuana in the car. Defendant said he had, and again accused Huntington of trying to run over him. When defendant had left, Huntington admitted he had marijuana in his car but said it belonged to the defendant. As Haney was returning Huntington to his cell, Huntington again told Haney that it was the defendant's fault the marijuana was in the car. Defendant called Haney to come over to his cell, and both Haney and Huntington went to the defendant's cell. Defendant, without being asked any questions,

admitted he was responsible for the marijuana. At that point Haney interrupted the defendant's discussion and read to him the *Miranda* warnings. Huntington, after defendant made the admission, said, "See, I told you that he would talk." The admission above described was received in evidence at the trial and is the basis of defendant's first assignment of error.

At trial, Huntington testified that defendant arranged for them to haul the marijuana north from Texas, that defendant helped load the car, and that defendant had ridden along from Texas. Officer Haney testified that defendant admitted responsibility for the marijuana and that a search of Huntington's car revealed four 5-gallon buckets holding more than 16 pounds of marijuana. Defendant put on no witnesses in his defense.

On the first assignment of error, defendant argues that the trial court should have excluded his statements to Haney because he made those statements prior to receiving *Miranda* warnings and as a result of custodial interrogation.

*Miranda v. Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), forbids the prosecution from introducing defendant's statements stemming from "custodial interrogation" unless defendant has first been given *Miranda* warnings. The U.S. Supreme Court defined "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.* at 444.

First we examine whether defendant was in custody in the *Miranda* sense. *Oregon v. Mathiason,* 429 U.S. 492, 97 S. Ct. 711, 50 L. Ed. 2d 714 (1977), emphasizes that custody under *Miranda* requires restricting one's freedom of movement, for only then does a coercive environment exist which requires *Miranda* warnings. Consequently, a suspect interrogated in a police station who is free to leave is not

in custody. See, also, *United States v. Tobin,* 429 F.2d 1261 (8th Cir. 1970).

Based on the above principle, the evidence would support the conclusion that defendant was not in custody in the *Miranda* sense until Officer Haney ordered him to remain at the station. Until that time, the defendant's freedom was not restricted, for he was considered the assumed victim and free to leave if he so requested. However, defendant was clearly in custody after his first interview with Haney when Haney told him that he had to stay for further questions.

We now look at the question of whether defendant, once in custody, was subjected to interrogation or whether he made the statements voluntarily. If a statement is voluntarily made and not a product of interrogation, it is admissible. *Miranda v. Arizona, supra.* See, also, *United States v. Voice,* 627 F.2d 138 (8th Cir. 1980). *Rhode Island v. Innis,* 446 U.S. 291, 100 S. Ct. 1682, 64 L. Ed. 2d 297 (1980), elaborates on the meaning of interrogation under *Miranda,* stating that *Miranda* applies "not only to express questioning, but also to any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id.* at 301. In *Innis, Miranda* rules were extended to the functional equivalent of interrogation. *State v. Bridgeman,* 212 Neb. 469, 323 N.W.2d 102 (1982).

Applying these principles, the evidence is sufficient to support the conclusion that the admission was voluntary and not the consequence of custodial interrogation. It is clear the statement was not made in response to any question by the officer, for no question was asked. Moreover, the record fails to establish that Haney spoke or acted in a manner that would reasonably elicit an incriminating response from the suspect. Hence, the statement was voluntary and thus admissible.

In defendant's second assignment of error, he

claims that the evidence was insufficient to establish the crime charged. A verdict must be sustained if, taking the view most favorable to the State, there is sufficient evidence to support it. *State v. Woodruff,* 205 Neb. 638, 288 N.W.2d 754 (1980). Circumstantial evidence to establish that possession of a controlled substance was with intent to distribute or deliver may consist of the quantity of the substance. *State v. Turner,* 192 Neb. 397, 222 N.W.2d 105 (1974). Here, the record supports the verdict; the evidence showed the defendant was in possession, and his possession of 16 pounds of marijuana was sufficient to support a factual finding of his intent to distribute.

AFFIRMED.