STATE OF NEBRASKA, APPELLEE, V. ROBERT J. TAYLOR,
APPELLANT.
375 N.W.2d 610

Filed October 25, 1985.   No. 85-166.

Charles W. Balsiger of Jewell, Gatz & Collins, for appellant.

Robert M. Spire, Attorney General, and Charles E. Lowe, for appellee.

KRIVOSHA, C.J., WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

PER CURIAM.

Upon trial to a jury the defendant, Robert J. Taylor, was found guilty of delivering marijuana, sentenced to imprisonment for 3 to 5 years, and fined $2,000. He has appealed and contends the trial court erred in (1) the admission into evidence of certain incriminating statements; (2) the admission into evidence of a tape recording of the alleged drug transaction; (3) the failure to direct a verdict for the defendant on grounds that the evidence was insufficient to support a

guilty verdict; (4) the allowance of expert opinion testimony that the substance sold was marijuana; and (5) the instruction to the jury defining marijuana and the failure to instruct that the State had the burden to prove that Taylor's acts were not statutorily excepted acts.

The evidence was such that the jury could find that the defendant sold an ounce of marijuana to an undercover agent for $70 on February 24, 1984. At the time the transaction took place, the undercover agent was equipped with a radio transmitter. The conversations between the defendant and the agent were recorded by a policeman stationed near the scene.

The defendant was arrested on June 2, 1984. While being "booked" at the police station, the defendant asked a detective, Timothy Schmitz, who had "narked him off." Schmitz testified as follows concerning that conversation:

A. Robert Taylor asked me who narked him off.

Q. And what did you respond to that question?

A. I said, "Robert, you know I can't tell you that."

Q. Then what did he say?

A. He said, "Maybe I'll find out and just waste somebody."

Q. What did you say in response to that?

A. I said, "That kind of talk will just get you in more trouble than you're already in."

Q. What did he say?

A. He said, "It can't get much worse than this."

The defendant contends that it was error to receive this testimony over objection, in the absence of proof that the defendant had been advised as to his constitutional rights. Although the defendant was in custody at the time the statements were made, he was not being questioned in regard to the crime. The booking procedure involved questioning Taylor about statistical information and physical characteristics from a form sheet but did not involve questions about the facts or circumstances of the case. It was the defendant who volunteered a question about the case.

*Miranda v. Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), sets the constitutional requisites for the admissibility of in-custody statements:

[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.

*Miranda* does not require that volunteered statements be suppressed in the absence of the warnings: "Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence." 384 U.S. at 478. The admissibility of an accused's statement depends upon a showing that the statement was freely and voluntarily made. *State v. Robertson*, 219 Neb. 782, 366 N.W.2d 429 (1985); *State v. Bodtke*, 219 Neb. 504, 363 N.W.2d 917 (1985).

The trial court's findings on a motion to suppress will not be disturbed on appeal unless, given the totality of the circumstances, they are clearly wrong. *State v. McCarthy*, 218 Neb. 246, 353 N.W.2d 14 (1984).

Taylor was not induced or coerced into making the statements. He was not interrogated about the crime as he was being booked into jail. An in-custody statement voluntarily made without the benefit of *Miranda* warnings is admissible if it is not the product of interrogation. *State v. Parsons*, 213 Neb. 349, 328 N.W.2d 795 (1983). Detective Schmitz did not question Taylor about the crime either directly or indirectly in a manner reasonably likely to elicit an incriminating response. *Rhode Island v. Innis*, 446 U.S. 291, 100 S. Ct. 1682, 64 L. Ed. 2d 297 (1980). "[I]nterrogation occurs when the subject is placed under a compulsion to speak," and does not occur when a statement is made in response to a " 'neutral,' 'spontaneous' question, not designed to elicit a confession." *State v. Lamb,* 213 Neb. 498, 502, 330 N.W.2d 462, 466 (1983). The trial court did not err in admitting the statements into evidence.

Taylor's second assignment of error involves the admission of the recording of the conversation during the drug delivery. Taylor complains that the tape recording should have been

excluded due to insufficient foundation and the fact that substantial portions of the tape were inaudible.

We have held that "tape recordings of relevant and material conversations are admissible as evidence of such conversations and in corroboration of oral testimony of the conversations, provided proper foundation is laid." *State v. Loveless*, 209 Neb. 583, 589, 308 N.W.2d 842, 846 (1981).

At trial defense counsel objected on grounds that the tape was not shown to be valid or authentic and that the speakers on the tape were not properly identified. The undercover agent testified that the defendant was the person from whom he had purchased the marijuana and that the defendant was the only male spoken to during the course of the transaction. The jury heard the agent testify and also make the introduction to the tape. This would enable the jury to discern between the two male voices on the tape. The defendant's mother's voice was identifiable because of the conversation about hair dyeing. Other voices on the tape were merely incidental and did not relate to the drug transaction.

The trial court properly admitted the tape despite its less than perfect quality. Partial inaudibility or indistinctness does not require exclusion of a sound recording unless those portions are " 'so inaudible and indistinct that the jury must speculate as to what was said. . . .' " *State v. Loveless, supra* at 589, 308 N.W.2d at 846. Even then, exclusion is discretionary " 'unless the unintelligible portions of a tape recording are so substantial as to render the recording as a whole untrustworthy . . . .' " *Id.*

In *Loveless, supra* at 589, 308 N.W.2d at 846-47, the admission of a partially inaudible tape was upheld where "certain material parts were audible and were recorded by the court reporter on the playback of the tapes in the courtroom . . . ." In the present case the court reporter was able to record a substantial portion of the tape as it was played in court. Several of the statements recorded were material and corroborative in light of testimony by the cooperating individual. For example, there were statements corroborative of testimony that the defendant had only a half ounce of marijuana for sale but that he would attempt to get the other half at a place called "Papa Red's." It also contained statements corroborative of testimony

that the cooperating individual purchased the first half ounce for $35, by giving Taylor $40 with $5 change back, and that Taylor was given $35 prior to leaving the house to pick up another half ounce of marijuana. Similarly, the tape corroborates testimony that the two half ounces purchased from Taylor were combined upon his arrival back at the house. In view of the support which the recording gave to the agent's testimony, it cannot be said that the tape was so untrustworthy as to require exclusion. See *United States v. Jones*, 540 F.2d 465 (10th Cir. 1976), *cert. denied* 429 U.S. 1101, 97 S. Ct. 1125, 51 L. Ed. 2d 551 (1977). The trial court did not abuse its discretion in admitting the tape.

The defendant challenges the sufficiency of the evidence, claiming that, without the tape recording, there is only the uncorroborated testimony of the cooperating individual to prove the delivery of a controlled substance. Neb. Rev. Stat. § 28-1439.01 (Cum. Supp. 1984) provides that "[n]o conviction for an offense punishable under sections 28-401 to 28-438 shall be based solely upon the uncorroborated testimony of a cooperating individual."

Taylor was convicted under Neb. Rev. Stat. § 28-416(1)(a) (Reissue 1979) for knowingly or intentionally delivering the controlled substance of marijuana. In addition to the undercover agent's testimony, a State Patrol investigator testified that before the agent approached Taylor he had no marijuana in his possession and that upon his return he possessed an ounce of the substance. While the investigators monitoring and surveying the scene did not visually observe the deliveries which took place inside Taylor's home, they were able to corroborate the agent's testimony about Taylor's and his own movements. There was additional support for his testimony in photographs taken by one of the investigators and in the defendant's statements to Detective Schmitz.

We have previously held that the statutory precursor identical to § 28-1439.01 "only requires that a conviction be based on something more than only a cooperating individual's testimony." *State v. Beckner*, 211 Neb. 442, 446, 318 N.W.2d 889, 892 (1982). In *Beckner* we expressly rejected an argument that then Neb. Rev. Stat. § 28-439 (Reissue 1979) required that

a cooperating individual be corroborated on every element of the crime. Instead, we held that "corroboration is sufficient if the witness is corroborated as to material facts and circumstances which tend to support the testimony as to the principal fact in issue." *Beckner, supra* at 447, 318 N.W.2d at 893. The testimony and pictorial evidence supplied by the investigators, as well as the defendant's admissions, provided the necessary corroboration, with or without the admission of the sound recording.

A guilty verdict will not be reversed by this court on appeal unless the evidence is so lacking in probative force that it is insufficient as a matter of law. *State v. Ruzicka*, 218 Neb. 594, 357 N.W.2d 457 (1984). Considering the undercover agent's testimony, the corroborating testimony of the three law enforcement officers who monitored and maintained surveillance of the agent and Taylor at the time of the transaction, the 26 photographs taken at or near the time of the transaction, the tape recording of the transaction, and the defendant's admissions, it cannot be said that the trial court erred in refusing to direct a verdict for the defendant.

Similarly, there is no merit to the defendant's contention that expert opinion testimony identifying the substance obtained from Taylor as marijuana was improperly admitted. A general foundational objection does not reach the qualifications of an expert witness. *State v. Bideaux*, 219 Neb. 718, 365 N.W.2d 830 (1985). In the present case, as in *Bideaux*, defense counsel made a general foundational objection at trial, and on appeal attempts to challenge the expert's qualifications as a witness. This court will not consider issues for the first time on appeal if not properly raised in the pleadings or litigated at trial. *Armstrong v. Hartford Life Ins. Co.*, 219 Neb. 128, 361 N.W.2d 511 (1985). As we stated in *Bideaux, supra* at 721, 365 N.W.2d at 832, the logic behind requiring a specific qualification objection at trial is that "both the court and opposing counsel are entitled to know that the objection goes to the qualifications of the witness as an expert rather than to the factual foundation for the opinion."

Even if the qualification issue had been properly preserved at trial, we would find no merit in the defendant's argument. The

expert who testified at trial was a forensic drug chemist. His training and background included: a bachelor of science degree in chemistry and microbiology; 8 years of experience as a forensic drug chemist, analyzing substances to determine the presence of controlled substances; 3 to 4 months of intensive training by other chemists in the State Patrol laboratory; the performance of 9,000 to 10,000 different substance analyses to test for controlled substances content; and the performance of 5,000 to 6,000 substance analyses to test for marijuana content. After presenting this background and detailed descriptions of the tests run on the substances, the witness was permitted to testify that the substance obtained from the defendant was marijuana. There was adequate foundation for the testimony.

The defendant's final assignment of error pertains to the trial court's jury instructions on the material elements of the crime and on the definition of marijuana. These claims are also without merit.

Section 28-416(1)(a) provides in part that "[e]xcept as authorized by this article, it shall be unlawful for any person knowingly or intentionally: (a) To . . . deliver . . . a controlled substance." The defendant argues that because the State has the burden to prove each essential element of the crime beyond a reasonable doubt, the jury should have been instructed that the State had to prove that his acts were not specifically excepted by the statute. The trial court correctly refused to so instruct the jury.

Neb. Rev. Stat. § 28-432(1) (Reissue 1979) of the Uniform Controlled Substances Act, Neb. Rev. Stat. §§ 28-401 et seq. (Reissue 1979 & Cum. Supp. 1984), provides:

> It shall not be necessary for the state to negate any exemption or exception set forth in this article in any complaint, information, indictment or other pleading or in any trial, hearing, or other proceeding under the provisions of this article, and the burden of proof of any such exemption or exception shall be upon the person claiming its benefit.

In a similar situation we held that the State did not bear the burden of proof on the issue of exemptions to a charge of unlawful sales of unregistered securities. *State v. Fries,* 214

Neb. 874, 337 N.W.2d 398 (1983). The statutes applicable in *Fries* included a provision like § 28-432 which placed the burden of proving an exemption upon the person claiming it. Because there was no evidence in the record to suggest that the securities involved fell within the applicable exemptions, the trial court had properly refused to give the requested instruction.

Taylor argues that the record is devoid of evidence showing that he was not within a statutory exception. It is also devoid of any evidence to suggest that his acts *were* within an exception. The trial court correctly refused to instruct on the exceptions.

The defendant also requested that the jury be instructed as to the technical definition of marijuana found in § 28-401(14) (Cum. Supp. 1984). The court declined to do so and instead instructed that "[m]arijuana is a controlled substance under the laws of Nebraska at the time alleged in the Information." We addressed a comparable question in *State v. Ambrose*, 192 Neb. 285, 220 N.W.2d 18 (1974). In that case the defendant, convicted on controlled substances counts, complained that the court had failed to instruct that "cocaine does not include de-cocainized coca leaves or extractions which do not contain cocaine or ecogine [sic]." *Id.* at 289, 220 N.W.2d at 21. In affirming the trial court's refusal to give this instruction, we noted that the evidence at trial presented no factual issue as to whether the substances involved were anything but cocaine. We concluded that if the requested instruction had been given, the jury would have had to engage in speculation and conjecture in the absence of relevant evidence. A tendered instruction, otherwise appropriate, which either misstates the law or tends to confuse or mislead the jury should not be given by the trial court. *State v. Samuels*, 205 Neb. 585, 289 N.W.2d 183 (1980).

In the present case there was expert opinion testimony that the substance obtained was marijuana. Cross-examination of the expert did not refute the opinion, nor did the defendant present independent evidence tending to do so.

Reading the instructions as a whole, we conclude that the law was fairly presented and the jury was not misled. *State v. Perkins*, 219 Neb. 491, 364 N.W.2d 20 (1985). There was no prejudicial error.

The judgment is affirmed.

AFFIRMED.

BOSLAUGH, J., participating on briefs.