STATE OF NEBRASKA, APPELLANT, V. KIM MEYERS, APPELLEE.

393 N.W.2d 533

Filed September 26, 1986.   No. 86-500.

Randy R. Stoll, Seward County Attorney, for appellant.

David L. Kimble of Souchek & Kimble, for appellee.

CAPORALE, J.

Defendant, Kim Meyers, who states he is 19 years old, has been charged with violating Neb. Rev. Stat. § 28-319(1)(c) (Reissue 1985) by sexually penetrating one alleged to be "less than sixteen years of age." The district court sustained his motion to suppress and exclude from use in evidence all statements he made to the State's investigator. The State has appealed to a single judge of this court pursuant to the provisions of Neb. Rev. Stat. § 29-116 (Reissue 1985), claiming that although Meyers was not given the *Miranda* warnings, they were not required as he was not in custody when he made the statements. For the reasons discussed in this opinion, the ruling of the district court is reversed.

This review is controlled by the rule that the trial court's findings of fact in ruling on a motion to suppress evidence will not be overturned on appeal unless, given the totality of the circumstances, the findings are clearly wrong. *State v. LaChappell*, 222 Neb. 112, 382 N.W.2d 343 (1986); *State v. Taylor*, 221 Neb. 114, 375 N.W.2d 610 (1985).

On February 3, 1986, Chief Lowell Sellmeyer of the Milford Police Department contacted Meyers and told him that a representative of the Nebraska State Patrol wanted to talk to him about his relationship with a certain young female. Two days later, Sellmeyer again contacted Meyers and told him that the State Patrol officer was at the police station and wanted to talk to him. As it was a cold day and Meyers did not have a coat, he asked Sellmeyer for a ride. Sellmeyer obliged, and testified that when Meyers first got into the police cruiser, Meyers was told that he was not under arrest and that he was free to go at any time. Meyers, however, said he wanted to talk to the State Patrol officer.

At the police station Sellmeyer waited with Meyers for patrol investigator John Adler, who was otherwise occupied. It appears that Meyers was on parole from a sentence for burglary and, while waiting for Adler, asked to telephone his parole officer. He was permitted to do so but was unable to reach the officer. Meyers then asked to telephone his lawyer and, according to both Sellmeyer and Adler, did so and spoke with his lawyer.

Meyers was then interviewed by Adler in a city administration building room located adjacent to the police station. At the start of the interview Adler told Meyers that there had been allegations he was involved sexually with a "juvenile which in Nebraska constitutes a felony offense." Adler also told Meyers that he did not have to talk if he did not want to, that he was free to leave at any time, that if he was asked a specific question which he did not want to answer, he need not answer it, and that if he decided to go ahead with the interview, he would be free to leave at its conclusion. Meyers consented to be interviewed and during its course admitted that he had had sexual intercourse with the young female in question.

At the conclusion of this initial interview, a second interview was conducted and video tape recorded. The recording shows Meyers was again advised that he was not under arrest, that he did not have to tell Adler anything he did not want to, that he was free to go at any time, that at the conclusion of the interview he would be free to go regardless of what he said, and

that the statements he gave might be used later by someone in the county attorney's office or the sheriff's office. Meyers nonetheless proceeded with the interview and admitted to having sexually penetrated the young female in question. After the interview Meyers was permitted to leave.

*Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), prohibits the use of statements stemming from the custodial interrogation of the defendant unless the prosecution demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. The State concedes that such safeguards were not employed, and, thus, the pertinent question becomes whether the interviews resulting in Meyers' unrecorded and recorded inculpatory statements constituted "custodial interrogation." If so, the ruling of the district court is correct; but if the interviews did not constitute custodial interrogation, the ruling of the district court is erroneous, and the statements may be used in evidence. *State v. Saylor, ante* p. 694, 392 N.W.2d 789 (1986).

Obviously, the interrogations were "custodial" only if Meyers was in custody at the time of the questioning. One is in custody for *Miranda* purposes when there is a formal arrest or a restraint on his or her freedom of movement of the degree associated with such an arrest; the question of whether one is in custody is determined by how a reasonable person in defendant's situation would have understood his or her position. *State v. Saylor, supra*; *Berkemer v. McCarty*, 468 U.S. 420, 104 S. Ct. 3138, 82 L. Ed. 2d 317 (1984).

*California v. Beheler*, 463 U.S. 1121, 103 S. Ct. 3517, 77 L. Ed. 2d 1275 (1983), holds, three justices dissenting, that an inculpatory statement made by a suspect who was not given the *Miranda* warnings but who voluntarily went to the police station, was not placed under arrest, and was allowed to leave unhindered after an interview of less than 30 minutes was admissible in evidence, as the conditions of the suspect's voluntary participation did not render him "in custody." In *State v. Parsons*, 213 Neb. 349, 328 N.W.2d 795 (1983), the Nebraska Supreme Court held that a suspect who is interrogated in a police station but who is free to leave is not in custody.

Meyers was told when he asked Sellmeyer for a ride and during both interviews that he was free to leave. He was in fact permitted to leave after the interviews, and there is nothing in the record to suggest there was any nonverbal conduct on the part of Sellmeyer or Adler which belied their verbal assurances to Meyers that he was free to leave at any time. The inescapable conclusion, therefore, is that Meyers voluntarily went to talk with Adler and was indeed free to terminate the interviews and leave anytime he wished.

Meyers argues, however, that his status as a parolee, in and of itself, placed him in custody. He bases this contention on Neb. Rev. Stat. § 83-1,121 (Reissue 1981), which reads: "A committed offender while on parole shall remain in the legal *custody* and control of the Board of Parole. The board may at any time revoke the parole of an offender or recommit him to the custody of the Department of Correctional Services, with or without cause." (Emphasis supplied.)

This contention overlooks, however, that "custody" for *Miranda* purposes is narrowly circumscribed and exists only under the conditions specified earlier in this opinion. See *Minnesota v. Murphy*, 465 U.S. 420, 104 S. Ct. 1136, 79 L. Ed. 2d 409 (1984). Moreover, the language of § 83-1,121 itself makes clear that the "custody" to which it refers relates solely to the powers of the parole board over the committed offender.

With two justices dissenting from the summary disposition and one justice dissenting on the merits, the U.S. Supreme Court in *Oregon v. Mathiason*, 429 U.S. 492, 97 S. Ct. 711, 50 L. Ed. 2d 714 (1977), held that a parolee who at the request of a police officer voluntarily went to the police station, was immediately informed he was not under arrest, gave an interview in which he confessed a burglary, and then left the station without hindrance was not in custody or otherwise deprived of his freedom of action such as to require that he be given the *Miranda* warnings in order to render his confession admissible in evidence. See, also, *United States v. Miller*, 643 F.2d 713 (10th Cir. 1981), which holds that statements voluntarily given by a parolee to his parole officer did not fall within the scope of *Miranda*. Thus, one's status as a parolee does not in and of itself render one "in custody" for *Miranda*

purposes.

Under the totality of the circumstances in the present case, it is concluded that Meyers was not in custody at the time he made the inculpatory statements and that the trial court's finding and ruling thereon are therefore clearly wrong. Accordingly, the ruling appealed from is reversed.

REVERSED.